## UNION PACIFIC RAILWAY COMPANY *v.* CHEYENNE.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF WYOMING.

Argued November 18, 19, 1884.—Decided March 2, 1885.

The act of the legislature of Wyoming, passed December 13, 1879, which required the State auditor to furnish to the Territorial Board of Equalization a list for assessment and taxation of the road bed, superstructure, and other enumerated property of every railroad and telegraph company in the Territory, when any portion of the property of such company was situated in

more than one county ; and which required the board to value and assess the property of the corporation for each mile of its road or line, and to certify to the county clerks of the counties in which the property was situated the assessment per mile, specifying the number of miles and amount in each of the counties ; and which required the county commissioners to decide and adjust the number of miles and amounts within each precinct, township, or school district within their respective counties, and cause such amounts to be entered on the lists of taxable property returned by the assessors; withdrew the duty of assessing fractional parts of such railroad, and the property of such companies, from all local assessors in the Territory, including its incorporated cities.

A statute which provides a general scheme for assessing and taxing the property of railroad and telegraph companies as a whole, and for distributing it ratably among the different counties, and their several precincts, townships and districts, according to the number of miles of line in each, repeals, as to such property, a power conferred upon the authorities of a city to make provisions for the assessment of the taxes which they were authorized by other provisions of the city charter to assess and collect.

A bill which charges that the collection of an illegal tax would involve the plaintiff in a multiplicity of suits as to the title of lots being laid out and sold, which would prevent their sale, and which would cloud the title to all his real estate, states a case for relief in equity.

The bill in this case was filed by the Union Pacific Railway Company against the city of Cheyenne and its marshal, Ryan, to enjoin the collection of certain city taxes for the year 1880, which the railway company alleged were unlawfully assessed against it. The bill was demurred to by the defendants, and the District Court for the First Judicial District of Wyoming, in which the suit was brought, overruled the demurrer, and granted the injunction prayed for. The defendants adhered to their demurrer, and appealed to the Supreme Court of the Territory, and the decree of the District Court was reversed, and the bill ordered to be dismissed, and the case was brought here by appeal.

The main question raised by the bill was, whether the Union Pacific Railroad, which passes through the whole length of Wyoming Territory, and in its course passes through the city of Cheyenne, with its accompanying telegraph, appurtenances, and rolling stock, was liable to be assessed and valued for the purposes of taxation in Cheyenne by the city authorities, or only by the Territorial Board of Equalization, consisting of the

governor, treasurer and auditor of the Territory; and this question depended on the further question whether such assessment and valuation were governed by the city charter of the city, or by the act entitled "An Act in relation to the assessment of railroads and telegraph lines," passed December. 13, 1879. The city charter, which was last revised on the subject of taxation by an amendment passed on the 26th of November, 1879 (only seventeen days prior to the railroad assessment act), gives to the city power "to levy and collect taxes for general revenue purposes, not exceeding six mills on the dollar in any one year on all real, personal and mixed property within the limits of said city, taxable under the laws of the Territory;" and it is provided that "the assessment, levy, and collection of all taxes shall be made as may be provided by ordinance." Authority is also given to the city to raise a further tax to pay interest on its bonds, and a tax for improvement of streets and alleys. The railroad assessment act, passed on the 13th of December, 1879, is a very carefully prepared statute, providing for a mode of assessing the value of railroad property, and distributing it amongst the counties and districts through which the railroad may run. Although general in its terms, it must have had particularly in view the Union Pacific Railroad, to which alone it would principally apply. This act is so important a factor in the decision of this case that the first section is quoted entire. The title has already been quoted. The first section is as follows:

"SECTION 1. The president, secretary, superintendent, or other principal accounting officers of any railroad or telegraph company having property in this Territory, at the time of the assessment of every railroad and telegraph company, whether incorporated by any law of this Territory or not, when any portion of the property of said railroad or telegraph company is situated in more than one county, shall list for assessment and taxation, verified by the oath or affirmation of the person so listing, all the following described property belonging to such corporation within the Territory, viz.: Road bed, superstructure, right of way, and all structures situated thereon, rolling stock, side track, telegraph lines, furniture and fixtures

and personal property belonging to such corporation. Such list shall contain, first, the number of miles of such railroad or telegraph line in the Territory of Wyoming, and the number of miles of the same in each organized county therein; second, and such return shall be made to the auditor of the Territory on or before the first day of July, annually. If the return aforesaid be not received by said auditor by the third day of July, he shall thereupon proceed to obtain the facts and information aforesaid in any manner that may appear most likely to secure the same correctly, and for that purpose may address a written communication to the corporation, or to some officer of the corporation who has failed or refused to make the return aforesaid. As soon as practicable after the auditor has received said return, or procured the information required to be set forth in said return, a meeting of the Territorial Board of Equalization, consisting of the governor, territorial treasurer, and auditor, shall be held at the office of said auditor, and the said board shall then value and assess the property of said corporation for each mile of said road or line, the value of each mile to be determined by dividing the sum of the whole valuation by the number of miles of said road or line. In making up such valuation or assessment the said board shall examine and consider the return herein required to be made, or the information procured by the auditor in default of such return, together with such other reliable information relative thereto as they may be able to procure; said board shall not assess the value of any machine shop, or repair shop, or other buildings not situated on said right of way or grounds or other real estate of any corporation or company within this Territory; but it shall be the duty of the assessor of the county or district in which said machine or repair shops, or other buildings, or grounds, or other real estate is situated, to assess the same and make return thereof in the manner now provided for the assessment and return of real estate. On or before the first Monday of August, or so soon thereafter as the said board, or any two thereof, shall have made and determined said valuation and assessment, the territorial auditor shall certify to the county clerks of the several counties in which property of the

aforesaid corporation, or any part thereof, may be situated, the assessment per mile so made on the property of such corporation specifying the number of miles and amount in each of such counties; the county commissioners shall thereupon divide and adjust the number of miles and the amounts falling within each precinct, township, or school district in their respective counties, and cause such amounts to be entered and placed on the lists of taxable property returned by the several assessors. The auditor shall certify whether a return was made to him by such corporation, or proper officer thereof, or whether the information required in and by such returns was procured by himself; and in case the return was not made as required by this act, or, being made, was not sworn to, it shall be the duty of the county commissioners to add any amount not exceeding ten per cent. to the valuation thus brought before them."

The fifth section of the act declares as follows :

" All acts and parts of acts providing for the assessment of the property of railroad and telegraph companies, and the equalization of assessments, inconsistent with the provisions of this act, are hereby repealed, so far as they provide for the assessment and equalization of the property of said railroad and telegraph companies."

*Mr. John F. Dillon, Mr. Samuel Shellabarger* and *Mr. Jeremiah M. Wilson* for appellant.

*Mr. Francis Miller* for appellees.—The railway assessment act did not expressly repeal the statutes which conferred on the city undoubted power to regulate its own taxation, independently of general laws. The repealing clause of the act refers only to the Territorial and county revenue laws. The acts of November 26 and December 13, being *in pari materia*, and passed at the same session, must be construed as parts of one act. *Smith* v. *People*, 47 N. Y. 330; *Commonwealth* v. *Griffin*, 105 Mass. 185. Thus construing them, the intent of the legislature is found to be that both are in force, the later railway act operating upon assessments for county and Territorial taxation. Courts prefer to construe such acts so as to give force

to both, rather than imply a repeal of the earlier. Our construction gives effect to both. Similar statutes in other States have been so construed. *Dunleith & Dubuque Bridge Co.* v. *Dubuque*, 32 Iowa, 427; *Davenport* v. *Mississippi & Missouri Railroad Co.*, 16 Iowa, 363; *Ottawa* v. *County*, 12 Ill. 339; *Mayor* v. *Mutual Bank*, 20 N. Y. 387. Statutes of a general nature do not repeal by implication charters and special acts passed for the benefit of particular municipalities. Dillon, Municipal Corporations, § 54; *State* v. *Brainin*, 3 Zabr. (24 N. J. L.) 484, 529; *Baldwin* v. *Murphy*, 82. Ill. 485; *Bowen* v. *Lease*, 5 Hill, 221; *Louisville* v. *McKean*, 18 B. Mon. 9. The act of November 26 is a special act, being part of the charter of a municipality to persons residing in a particular locality. It is legislation having effect only at one place in the whole Territory. It gives the municipality certain powers which are to be exercised only within its limited boundaries for its own local purposes. On the other hand, the act of December 13, regulates a certain matter which is made general throughout the Territory. It is a good illustration of a general statute. But there is no repugnance between the two acts. The terms "township" and "school district" do not comprise cities. In Wyoming the word "precinct" has no significance as applied to taxation. It is found in a Nebraska statute from which the Wyoming legislation was borrowed. In Nebraska it had a significance, as there are in that State what are known as "taxing precincts." In Nebraska there was added to the enumeration the words "incorporated city or village," which shows that a "city" was not a "precinct." It has been so held in Nebraska. *State* v. *Dodge County*, 10 Neb. 20. Wyoming, in adopting legislation of Nebraska which had received judicial construction there, adopted the construction. *Drenman* v. *People*, 10 Mich. 169; *State* v. *Macon County*, 41 Missouri, 453; *Draper* v. *Emerson*, 22 Wis. 147. The counsel also discussed other questions which became unimportant in the view which the court took of the case.

MR. JUSTICE BRADLEY' delivered the opinion of the court. He recited the facts as above stated, and continued:

It requires only a casual reading of this act to discover its purpose and object. The difficulty of assessing the value of railroad property in separate parcels, located in distinct cities and townships, is almost insuperable. A railroad cannot be regarded as mere land, like farm land, or building lots; its value depends upon the whole line as a unit, to be used as a thoroughfare and means of transportation. A separate mile or two of its length is almost valueless by itself. And then its rolling stock has no particular locality except a constructive one in the place where the principal office of the railroad company is situated; and it would be manifestly unequal to give to that place the benefit of taxing the whole of it. The plan adopted by the statute avoids these difficulties. It places the power of assessing the value of the whole line (so far as it lies within the Territory), including the rolling stock, in the hands of the Board of Equalization; and after they have fixed such valuation, and ascertained what it amounts to per mile for the whole length within the Territory, such valuation per mile is certified by the territorial auditor to the clerks of the several counties through which the road passes, specifying the number of miles in each county, so as to give to each its pro rata share, and then the county commissioners divide and adjust the number of miles, and the amounts, falling within each taxing precinct, township, and school district, to be entered on their respective lists of taxable property.

It seems hardly to admit of a doubt that the object of this scheme was to withdraw the difficult task of assessing fractional parts of a railroad and its property from the hands of local assessors, who could hardly be expected to proceed upon any uniform plan, and each of whom would naturally favor his own particular district.

This being the evident purpose and object of the act, it is difficult to see why it should not apply to the city of Cheyenne as well as to every other portion of the Territory. But the counsel for the city raise several grounds of objection to this view, which it is necessary for us to consider.

They contend that the language of the city charter is very broad, authorizing the corporation to assess every kind of tax-

able property situated within the city bounds; and that this includes railroad property; and they insist that this law must stand until it can be shown to be repealed; that the railroad assessment law does not repeal it in express terms; and cannot be construed to repeal it by implication, because the city charter is a special law, intended for a particular locality, and will not be repealed by implication by any general law containing contrary provisions, unless the latter be expressed in such universal terms as necessarily to include every particular case; that such universal terms are not used in the law; but on the contrary, while other subordinate territorial divisions are included by name, corporate cities and municipalities are not mentioned nor alluded to. This is a summary of the defendants' argument. It is certainly plausible and entitled to careful consideration.

First: As to the relative character of the two statutes; is it true that the one is a special statute, and the other a general one, in the sense contended for? The city charter is special as it relates to a single district or municipality; but the railroad assessment act is quite as special as relating to a single subject of taxation. The one gives general powers of assessment and taxation to the city; but the other directs that railroad property shall be assessed and valued by the Board of Equalization in a particular way. Is not the last law even more special in character than the first? Suppose a law had been passed declaring that every horse in the Territory should be assessed for the purpose of taxation at the value of $200. Would not such a particular direction be binding on the city of Cheyenne as well as on the country districts? Do not the object and reason of the railroad assessment law apply to a city like Cheyenne, as well as to counties and townships? Ought not the policy of the State with regard to special objects of taxation to be extended to every portion of the State, unless some defect in the laws themselves prevents its being done.

Second: Is it true that the language of the railroad assessment act does not include cities in the fair construction of its terms? Does it not fairly include every territorial district or

division of Wyoming—cities as well as counties and townships? Note the following passage: "Said board shall not assess the value of any machine shop or repair shop, or other buildings not situated on said right of way or grounds, or other real estate of any corporation or company within this Territory; but it shall be the duty of the assessor of the county or district in which said machine or repair shops, or other buildings, or grounds, or other real estate is situated, to assess the same, and make return thereof in the manner now provided for the assessment and return of real estate." In using the words "county or district" in this clause, is not the latter word "district" used in its largest sense, to signify any subordinate territorial division whatever less than a county? It seems to us that the language used is intended to cover every case. In connection with this, read again the direction given to the county commissioners, after the territorial auditor has certified to them the assessment per mile made by the Board of Equalization : it is as follows: "The county commissioners shall thereupon divide and adjust the number of miles and the amounts falling within each precinct, township, or school district, in their respective counties, and cause such amounts to be entered and placed on the lists of taxable property returned by the several assessors." Does not this enumeration of subordinate tax districts (for clearly tax districts are meant) embrace every kind of tax districts within the county? "Precinct" is a general word and not a technical one in Wyoming; and indicates any district marked out and defined. In the connection in which it stands it signifies a district inferior to a county, for it is used to denote a portion of a county; and superior to a township, for the enumeration evidently proceeds from the greater to the less,— "precinct township, school district." What tax districts are there in Wyoming inferior to a county, and superior to a township, if incorporated cities and towns are not such?

As before suggested, the railroad assessment law, considering its purpose and object, ought to be extended to every tax district in the Territory, if its language admits of such a construction. We think that it not only admits, but fairly requires, such a construction.

If, in addition to this, we take into consideration the fifth section of the act, which expressly repeals " all acts and parts of acts providing for the assessment of the property of railroad and telegraph companies, and the equalization of assessments, inconsistent with the provisions of this act, . . . so far as they provide for the assessment and equalization of the property of said railroad and telegraph companies," we cannot doubt that the act was intended to reach every case of taxation of railroads in the Territory, when situated in more than one county.   Surely the charter of the city of Cheyenne is embraced in this description of acts, or parts of acts, to be repealed; for, according to the appellee's own contention, that charter does provide for the assessment of the property of railroad and telegraph companies; and there can be no doubt that the mode of making such assessment under said charter is entirely inconsistent with that prescribed by the act in question.   We are of opinion, therefore, that the assessment complained of was illegal and unauthorized.

But it is contended that the complainant should have sought a remedy at law and not in equity.

It cannot be denied that bills in equity to restrain the collection of taxes illegally imposed have frequently been sustained. But it is well settled that there ought to be some equitable ground for relief besides the mere illegality of the tax; for it must be presumed that the law furnishes a remedy for illegal taxation.   It often happens, however, that the case is such that the person illegally taxed would suffer irremediable damage, or be subject to vexatious litigation, if he were compelled to resort to his legal remedy alone.   For example, if the legal remedy consisted only of an action to recover back the money after it had been collected by distress and sale of the tax-payer's lands, the loss of his freehold by means of a tax sale would be a mischief hard to be remedied. ' Even the cloud cast upon his title by a tax under which such a sale could be made, would be a grievance which would entitle him to go into a court of equity for relief.   Judge Cooley fairly sums up the law on this subject as follows : " To entitle a party to relief in equity against an illegal tax, he must by his bill bring his case under some acknowledged head of equity jurisdiction.  The illegality of the

tax alone, or the threat to sell property for its satisfaction, cannot, of themselves, furnish any ground for equitable interposition. In ordinary cases a party must find his remedy in the courts of law, and it is not to be supposed he will fail to find one adequate to his proper relief. Cases of fraud, accident or mistake, cases of cloud upon the title to one's property, and cases where one is threatened with irremediable mischief, may demand other remedies than those the common law can give, and these, in proper cases, may be afforded in courts of equity." This statement is in general accordance with the decisions of this court as well as of many State courts. *Dows* v. *Chicago*, 11 Wall. 108, 109; *Hanniwinkle* v. *Georgetown*, 15 all. 547, 549; *State Railroad Tax Cases*, 92 U. S. 575, 612, 613, and cases there cited. In *Cummings* v. *National Bank*, 101 U. S. 153, 156, where the bank filed a bill to prevent the collection of a tax wrongfully assessed by the State against the shares of its stockholders, and which the bank was required to pay, we held that the fiduciary character in which the bank stood to its stockholders entitled it to come into a court of equity for relief. In the same case, the fact that a like remedy by injunction was given to parties in the State court was regarded as entitled to much weight; and it was further held that where a rule or system of valuation was adopted by the State Board of Assessment, calculated to operate unequally, and to violate the Constitution of the State, and applicable to a large class of individuals, or corporations, equity might properly interfere to restrain the operation of such unconstitutional exercise of power. And in *Litchfield* v. *Webster County*, 101 U. S. 773, 779, we held that a court of equity might relieve against an excessive rate of interest on taxes in arrear, which was really in the nature of a penalty, and which the State could not fairly and equitably demand, having itself claimed title to the property taxed.

These authorities are sufficient to illustrate the rules by which courts of equity should be governed in assuming jurisdiction of suits brought to arrest the collection of illegal taxes. We think that the allegations of the bill in this case bring it fairly within the jurisdiction of the court. It shows that it would involve

the plaintiff in a multiplicity of suits as to the title of lots laid out and being sold; would prevent their sale; and would cloud the title to all its real estate. We think that these results are sufficiently apparent, and render it unnecessary to look farther. The allegation of fraud has not been proven, and cannot, therefore, have any effect in the case. It is unnecessary to inquire into the sufficiency of other grounds for equitable relief which are alleged in the bill.

Another point raised by the defendants, not affecting the jurisdiction of the court but the propriety of its taking jurisdiction, is that the complainant ought to have paid the taxes which are conceded to be due to the city for the year 1880. As we understand the facts stated by the bill (which, of course, the demurrer admits to be true), the complainant did pay to the city all the taxes which would be due upon the assessment and valuation made by the Board of Equalization, including taxes due on outside property of the company in the city.

*The decree of the Supreme Court of Wyoming must be reversed, and the cause remanded, with instructions to enter a decree in favor of the complainant in conformity with this opinion; and it is so ordered.*