# BUCHÁNAN *v.* MACFARLAND.

EQUITY; TAXES; ASSESSMENTS FOR SPECIAL BENEFITS; TAX SALES; EMI-
NENT DOMAIN; APPEALS.

1. Equity will not, on the ground of public policy and also because the
complainant has an adequate remedy at law, entertain a bill, the sole
or main purpose of which is to vacate as void a tax assessment and
restrain the collection by the municipality of the tax so assessed
against the complainant's property (following *Burgdorf* v. *District
of Columbia,* 7 App. D. C. 405); but, where the main purpose of the
bill is to cancel a certificate issued to a purchaser at a sale of the prop-
erty under the assessment, on the ground that the sale was void even
if the assessment was valid, and that a cloud has thus been cast upon
complainant's title, equity will assume jurisdiction.

2. A sale made of real estate for default in paying special benefits assessed
against the property in condemnation proceedings to extend a street,
and a certificate issued to a purchaser at the sale, are void and a
cloud on title, and will be so declared by a court of equity at the
instance of the property owner, where the law for the collection of
such assessments was defective and inoperative at the time of the
sale, because, while providing that such assessments should be payable
in five equal instalments, it failed to provide at what intervals such
payments should be made, and a statute enacted to correct such de-
fect was not enacted until after the sale in question and did not act
retrospectively; and where, also, other provisions of law entitled the
purchaser at such sale to a deed after the expiration of two years
which would be prima facie evidence of a good title, and also to 12
per cent interest on the purchase money in case of redemption, while
the statute under which the assessment was made provided for but
4 per cent. (Construing acts of Congress of February 10, 1899 [30
Stat. at L. 834, chap. 150], and July 1, 1902 [32 Stat. at L. 616,
chap. 1352], and Following *Todd* v. *Macfarland,* 20 App. D. C. 176.)

3. Congress has power to authorize the extension of the streets of the city
of Washington, and to assess adjacent lands to the extent of the bene-
fits thereby received, in a designated taxing district; and the act of
Congress of February 10, 1899 (30 Stat. at L. 834, chap. 150), pro-
viding for the extension of Rhode Island avenue, is of such a character.

4. A proceeding to assess damages and benefits by reason of the extension of a city street is against the land damaged or benefited, and not against the owner; and a newspaper notice of such proceedings, published by order of the municipality as required by law, is a sufficient notice where it describes the land to be assessed, although it does not contain the name of the owner.

5. Where the owner of land sought to be assessed for benefits in street-extension proceedings dies after verdict assessing benefits and pending an order to show cause why the award should not be confirmed, his heirs at law are bound by the confirmation of the award. (Citing *Wilkinson* v. *District of Columbia,* 22 App. D. C. 289.)

6. The lien acquired by the District of Columbia by the confirmation of assessments under the act of Congress of February 10, 1899, providing for the extension of Rhode Island avenue in the city of Washington, and the assessment of lands benefited, and the entry of such assessments on the tax roll for collection, was not impaired by the fact that the time and manner of enforcement were not provided for by that act; but it was within the power of Congress to provide, as it did by the act of July 1, 1902, a method of enforcement. (Following *Todd* v. *Macfarland,* supra.)

7. Expressions in an opinion of an appellate court must be considered with reference to the questions actually presented for consideration.

8. The mere filing by certain landowners of objections to an assessment for benefits in a proceeding under the act of Congress of February 10, 1899, for the extension of Rhode Island avenue, and the overruling by the lower court of such objections, did not of themselves have the effect of at once vacating the assessment and require the court to impanel a new jury of twelve under the provisions of sec. 263, D. C. Rev. Stat., so as to render void a subsequent order of confirmation of the assessment, as against the attack of persons who were not parties to the original objections. (Distinguishing *Brown* v. *Macfarland,* 19 App. D. C. 525, and *Macfarland* v. *Saunders,* 25 App. D. C. 438.)

9. The rule that one seeking to remove a tax levy as a cloud upon his title must tender payment, or offer to pay any part thereof that may be admitted to be valid and collectible, in order to entitle him to relief against so much as may be illegal, does not apply to the case of property owners seeking in equity to have a sale under an assessment for special benefits declared void on the ground that, while the statute authorizing the proceedings provided for a valid assessment, it was defective in failing to provide properly for the collection thereof, where a subsequent act, curing the defect, was not passed until after the filing of the bill of complaint. Under such circumstances, nothing

was due from complainants on the filing of the bill; but they will be required by the final decree in their favor to pay the assessment with the interest provided for by the curative act, and from its date.

10. Under such circumstances, a purchaser at such tax sale, who is a defendant to the suit, and whose certificate is thereby canceled, is entitled to receive from the property owners the amount for which he bid in the property, with the interest allowed by the curative act; and, if such interest is less than purchasers at tax sales generally are entitled to on redemption, as provided for by another statute, his claim for the difference, if he has one, is against the municipality.

11. Where property owners file a bill to have a sale under an assessment for special benefits made in condemnation proceedings declared void, instead of appealing from the order of assessment in the condemnation proceedings, their case will be determined on the record therein, and matters contained in the records of appeals by other property owners in the condemnation proceedings will not be considered.

No. 1816. Submitted February 18, 1908. Decided March 16, 1908.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia dismissing a bill of complaint to avoid a sale of real estate for default in paying an assessment for special benefits in condemnation proceedings. *Reversed.*

The COURT in the opinion stated the facts as follows:

The bill in this case was filed by the complainants Helen Buchanan, John Ripley Buchanan, and Francis James Buchanan, by their next friend, James A. Buchanan, on May 8, 1902, against the commissioners of the District and Watson J. Newton, a resident thereof.

The allegations are, substantially, that the infant complainants, who sue by next friend, live with their father, an officer of the Army of the United States, who was then stationed in the Island of Porto Rico, and are the only heirs at law of John R. Meyers, who died intestate in the city and State of New York on December 22, 1899. That said Meyers was, at the time of his death, seized and possessed of lot 3 and part of lot 2 in Bloomingdale, a subdivision of parts of a tract of

land in the District of Columbia. That, on March 8, 1899, the District Commissioners filed a petition in the supreme court of the District, under authority of an act of Congress approved February 10, 1899, entitled "An Act to Extend Rhode Island Avenue," to have a jury impaneled to assess the damages incurred by the extension so authorized. That no notice was given to said Meyers of the said proceeding, and no appearance was made therein on his behalf. That, on December 1, 1899, the said jury returned a verdict wherein they assessed the sum of $1,522 as benefits accruing to the lots of said Meyers through the extension of the said avenue. That a rule to show cause why said verdict should not be confirmed was issued by the court into which it had been returned. That, in response to said rule, several owners of land affected by said verdict filed objections to its confirmation, the legal effect of which exceptions, it is charged, was to require the impaneling of another jury, and to render void any assessment sought to be made under said verdict. That the assessments as made under said verdict are void because the act does not provide when the same shall be paid. That, as the same appear on the tax rolls, they cast a cloud on complainants' title. That, notwithstanding complainants called the attention of the commissioners to the invalidity of the assessments, and requested that no steps be taken to enforce the same, the said commissioners advertised the said lots for sale for nonpayment of said assessments, which included interest at 4 per cent per annum from February 7, 1900, and cost of advertisement. That the invalidity of said assessment does not appear on the face of the tax records, but depends upon judicial investigation, and seriously clouds complainants' title. That a sale was made under said advertisement on April 15, 1902, at which the complainants' said lots were purchased by defendant Newton for the whole amount of the assessments thereon, including interest and costs. That, in accordance therewith, said Newton will receive a tax-lien certificate bearing interest at the rate of 15 per cent per annum. That said sale and said certificate will further cloud the title of complainants, besides subjecting them to heavy penalties

and charges. That the statute under which the said proceedings were had is unconstitutional and void because the taxing district fixed authorizes assessments against certain lands only, and leaves out other lands occupying the same relative position to the said street extension, for which reason the taxing scheme of the act is arbitrary, unequal, and unfair. That complainants are in possession of said lots, and cannot, therefore, take any proceeding at law to dispel the cloud upon their title.

The prayers are that the said sale be declared void, and the tax-lien certificates aforesaid issued to said Newton declared void; that the said assessments be declared invalid and void, and that the defendants be ordered to cancel the same, and be perpetually enjoined from referring thereto in any tax certificate to be issued by them.

Newton answered the bill alleging his purchase at the said sale, which he alleged to be regular, the receipt by him of the usual tax-lien certificate as said purchaser, and that he is entitled to retain the same until redeemed by the owners of the lots as provided by law in such cases.

The answer of the commissioners admitted the allegations of the bill as to the title and possession of the complainants. They alleged that notice of the proceedings for condemnation and assessment was given by publication as required by law, and that the same appears in the record thereof; that the proceedings were regular and valid, but, if not, the invalidity appears on the face thereof, and in no sense constitutes a cloud upon the title. They deny the invalidity of the act under which the assessment was made, and aver that the complainants appeared in the said proceeding and moved to quash the same; the motion was overruled, and complainants failed to appeal therefrom; that their remedy at law is complete, and this court is without equitable jurisdiction in the premises.

The cause was submitted to the court upon the bill, answers, and the following agreed statement:

"John R. Meyers, a resident of the State of New York, was, at the time of his death, and for many years prior thereto

had been, the owner of all of lot 3 and the north 25 feet front by the full depth thereof of lot 2 in block 2 in a subdivision of lands in the District of Columbia known as Bloomingdale. He died on the 22d day of December, 1899, in the city of New York, unmarried and intestate, leaving the complainants, all infants under the age of twenty-one years, his sole heirs at law.

"On the 8th day of March, 1899, the said Commissioners began proceedings in this court, on the District side thereof, for summoning a jury of seven to award damages and assess benefits to adjacent lands by reason of a proposed extension of Rhode Island avenue under an act of Congress approved February 10, 1899. A jury of seven was impaneled and, on the 1st day of December, 1899, returned a verdict assessing, *inter alia,* said lots so aforesaid belonging to the complainants, to an aggregate of $1,522 as for benefits supposed to have resulted from said proposed extension of Rhode Island avenue.

"Of this proceeding the said John R. Meyers had no notice, and did not appear before the jury at any time during their proceedings, either in person or by attorney. Notice was, however, given by the said commissioners by advertisement in the Washington Post and the Evening Star. Said advertisement described the lands to be assessed, as specified in said act of Congress, but it did not contain the name of said John R. Meyers, and the fact of its publication was never brought to his attention.

"Subsequently an order of ratification nisi was passed in the cause and published in the Washington Law Reporter on, to wit, the 2d day of January, 1900, but no copy thereof was served upon the complainants. As before shown, said John R. Meyers died on the 22d of December, 1899, and before the time limited in said order for showing cause had expired. At this time, and for more than a year afterwards, these complainants were living with their father on the island of Porto Rico, where he was on duty as an officer of the United States Army. No exceptions to said verdict were taken by the said Meyers or these complainants, but objections thereto were filed

in the cause by other owners of property adjacent to and abut-
ting on Rhode Island avenue, whose lands were similarly as-
sessed as for benefits expected to result from the said extension.

"In the pamphlet of sales for taxes in arrear on the 1st
day of July, 1901, issued by the officials of the District of
Columbia, such sales being advertised to begin on the 8th day
of April, 1902, complainants' lots were advertised for sale as
follows:

"Meyers, John R., Bloomingdale, block 2, lot 3 and
                    improvements.
Assessment for extension of Rhole Island avenue ..$1,342.00
Interest from February 7, 1900 ...................    116.42
Advertisement  ...............................        .50
                                                 ─────────
                                          .      $1,458.92
Bloomingdale, block 2, north part of lot 2 and improvements.
Assessment for extension of Rhode Island avenue ....$180.00
Interest from February 7, 1900 ...................    15.66
Advertisement  ................................       .50
                                                 ─────────
                                                  $196.16

"On the 15th day of April, 1902, the complainants' lots
were sold under the foregoing advertisement and bought in by
defendant Watson J. Newton for the amount claimed to be
due because of said assessments, interest thereon, penalties, and
costs.

"On the 8th day of May, 1902, the complainants exhibited
their original bill in this cause against the said commissioners
and the said Watson J. Newton, praying that the said sale
for taxes in arrear be vacated, and the said assessments de-
clared invalid and of no effect.

"Defendant Newton filed an answer to the bill on the 10th
day of May, 1902, wherein he averred that he purchased said
lots at the aforesaid sale, that the ususal tax-lien certificates
had been issued, and that he was entitled to retain these certi-

ficates until redeemed as provided by law by the owners of the property. Issue was joined on this answer.

"The commissioners filed a general demurrer to the bill which demurrer has been overruled.

"It is now stipulated by counsel for the respective parties that this cause may be heard and finally determined on the bill, the answer, and the foregoing agreed statement of facts, the right being reserved to refer to such parts of the record in the condemnation proceedings (District Court Case No. 544), as any of the parties hereto may desire, reserving to the parties the right to question the jurisdiction of the court."

The record shows the order of publication made in the original proceeding, on March 22, 1899, directing notice to all concerned to be published in the Evening Star, the Daily Post, and the Weekly Washington Law Reporter, all papers published in the city of Washington. It shows that this publication was made as ordered. It shows the order impaneling the jury of assessment after the notice, together with the verdict returned by them. It shows, also, that a decree was entered January 2, 1900, confirming the verdict unless cause to show why the same should not be confirmed, after notice by publication; and that exceptions to confirmation filed by certain landowners affected by the verdict were overruled January 27, 1900, and the confirmation made final. Complainants' names do not appear among those excepting to the confirmation of the verdict.

The learned justice presiding in the equity court delivered a brief opinion to the effect that the court was without jurisdiction in the premises, and, in accordance therewith, a decree was entered dismissing the bill. From this decree complainants have appealed.

*Mr. Samuel Maddox* and *Mr. H. Prescott Gatley* for the appellants.

*Mr. E. H. Thomas,* Corporation Counsel, for the appellees the District Commissioners..

*Mr. J. Wilmer Latimer* for the appellee Watson J. Newton.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. If the sole or main purpose of this bill is to vacate the assessment and restrain the collection, by the municipal authorities, of the tax so assessed against the complainants' property, as done without authority of law, its dismissal was within the rule laid down in such cases by the Supreme Court of the United States. *Dows* v. *Chicago*, 11 Wall. 108, 110, 20 L. ed. 65, 66; *Hannewinkle* v. *Georgetown*, 15 Wall. 547, 21 L. ed, 231; *State Railroad Tax Cases*, 92 U. S. 575, 613, 23 L. ed. 663, 673; *Burgdorf* v. *District of Columbia*, 7 App. D. C. 405, 413. The reason of the rule is thus stated in *Dows* v. *Chicago*: "It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers upon whom the duty is devolved of collecting the taxes may derange the operations of government, and thereby cause serious detriment to the public." In such cases an adequate remedy ordinarily exists through an action at law to recover the tax the collection of which is enforced against the protest of the taxpayer. And so, where the proceeding for condemnation and incidental assessment is pending in a court where the owner of property to be affected has the opportunity to defend against the imposition of the assessment and obtain relief, if entitled thereto, equity will not assume jurisdiction to stay the proceedings. *Wilson* v. *Lambert,* 168 U. S. 611, 618, 42 L. ed. 599, 601, 18 Sup. Ct. Rep. 217.

In the case at bar the proceeding to assess was at an end, and the infant defendants were in no situation to assert any rights therein, and, when actually informed of the necessity of action, the time for appeal, even, had passed. Moreover, before their bill could be filed, the judgment confirming the

assessment had been executed by the sale of the lots, the District of Columbia had acquired the entire amount of the assessment from the purchaser at said sale, and an inchoate title had passed to him. The appellants contend that the main purpose of their bill is to cancel the certificate issued to the purchaser at a sale which was without authority of law, even if the assessment had been regularly made, as constituting a cloud upon their title; and, in addition thereto, to vacate the assessment as illegal and void. It is contended that the court of equity has jurisdiction to remove the cloud, and, having jurisdiction for that purpose, may determine every question involved. Notwithstanding the rule laid down in *Dows v. Chicago* and *Hannewinkle* v. *Georgetown,* supra, it was admitted in those cases that the rule would not govern where there were in addition "special circumstances bringing the case under some recognized head of equity jurisdiction, such as that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or, where the property is real estate, throw a cloud upon the title." In *Union P. R. Co.* v. *Cheyenne (Union P. R. Co.* v. *Ryan)* 113 U. S. 516, 525, 28 L. ed. 1098, 1101, 5 Sup. Ct. Rep. 601, it was said: "It cannot be denied that bills in equity to restrain the collection of taxes illegally imposed have frequently been sustained. But it is well settled that there ought to be some equitable ground for relief besides the mere illegality of the tax; for it must be presumed that the law furnishes a remedy for illegal taxation. It often happens, however, that the case is such that the person illegally taxed would suffer irremediable damage, or be subject to vexatious litigation, if he were compelled to resort to his legal remedy alone. For example, if the legal remedy consisted only of an action to recover back the money after it had been collected by distress and sale of the tax-payer's lands, the loss of his freehold by means of a tax sale would be a mischief hard to be remedied. Even the cloud cast upon his title by a tax under which such a sale could be made would be a grievance which would entitle him to go into a court of equity for relief." See also *Lyon* v. *Alley,* 130 U. S. 177,

187, 32 L. ed. 899, 903, 9 Sup. Ct. Rep. 480; *Ogden City* v. *Armstrong,* 168 U. S. 224, 238, 42 L. ed. 444, 452, 18 Sup. Ct. Rep. 98. We are of the opinion that the facts alleged in the bill tending to show that a cloud has been cast upon the title are sufficient to bring the case within the doctrine of those cases.

The act of February 10, 1899, under which the condemnation proceeding was instituted, provided, in section 3, that one half of the damages for land taken for the extension of Rhode Island avenue should be assessed against certain property lying on each side of said avenue, within certain boundaries including the Bloomingdale subdivision and other lands described. Section 5 provided: "That, when confirmed by the court, the assessments made as aforesaid shall severally be a lien upon the land assessed, and shall be collected as special-improvement taxes in the District of Columbia have been collected since February 20th, 1871, and shall be payable in five equal instalments, with interest at the rate of 4 per cent per annum until paid." [30 Stat. at L. 835, chap. 150.] The meaning of this section was passed upon in the case of *Todd* v. *Macfarland,* 20 App. D. C. 176, 182, where it was said by Mr. Chief Justice Alvey: "As will be observed, the assessments are to be collected as special-improvement taxes are collected, and are made payable in five equal instalments, without saying at what interval of time such payments shall be made; whether annually, semiannually, or monthly. It is manifest that the amounts of the assessments were not to be paid all at once; and whatever time was intended to be given for payment was intended to be divided so as to make the payments equal in amount and at equal intervals of time, commencing from the first of the five instalments. But the question of time is left in entire uncertainty." In that case, which was an appeal from an order confirming a verdict assessing damages and benefits, it was held, however, that this defect in the mode of collection of the assessments did not render them void; and it was said that such defective means of collection might be cured and rendered effective by a subsequent act of Congress.

At the time the sale complained of in this case was made,

there had been no act of Congress curing this defect in section 5, and there was no power of sale for an instalment of the amount of the assessment, much less for the whole thereof at one time. The law for the collection of taxes provides that, when a sale for taxes is made, a certificate of purchase shall be issued to the purchaser thereof, and that the property so sold may be redeemed at any time within two years by paying the collector of taxes, for the use of the purchaser, the sum mentioned in the certificate with interest thereon at the rate of 12 per cent per annum. In case of failure to redeem as aforesaid, it is provided that a deed shall be executed to the certificate holder, "which deed shall be admitted and held to be prima facie evidence of a good and perfect title in fee simple," to the land so purchased. Now, had the appellants taken no steps to arrest the perfection of said sale by the execution of the deed to the purchaser, who had been made a party to the suit, it would have issued to him on the expiration of the two years from the date of the issue of the certificate, unless in the meantime the complainants had redeemed their lots by the payment of the principal sum with 12 per cent interest thereon per annum, although by the terms of the law the assessment bore but 4 per cent interest. That the sale, though without lawful authority, and the issue of the certificate constituted, a serious cloud upon the complainant's title, there can be no doubt in our opinion, for it does not appear from the record that the invalidity of the sale is apparent upon the assessment rolls, or upon the face of the certificate. Moreover, the deed that would, in ordinary course, follow the dismissal of the bill, is made prima facie evidence of a good title, that would require extraneous evidence to overcome it.

Following the suggestion made in *Todd* v. *Macfarland,* supra, the commissioners obtained from Congress an act curing the defect pointed out in respect of the collection of such taxes in the act of 1899, by providing that in all cases where the assessments for benefits for extensions have been, or may hereafter be, levied, payment of the same shall be made in five equal annual instalments with interest at the rate of 4 per cent per an-

Vol. XXXI.—2.

num from and after sixty days after the confirmation of the verdict and award. The sale in this case had occurred before the passage of this act on July 1, 1902, and the latter does not pretend to validate sales that may have been previously made, even if it had been within the power of Congress so to do. Its sole purpose and effect was to correct the defect in the assessment act by fixing with certainty the time for the payment of the instalments of the assessments that had been made under the former inoperative law. Under its provisions, no sale could be made for the entire amount of the assessment, save, possibly, in cases where the instalments had not been collected or enforced within the five years allowed for payment in that form. But no such question arises here.

2. In so far as the bill seeks to vacate the verdict and order of confirmation, and the lien created thereby, relief must be denied.

(1) There is no doubt of the power of Congress to authorize the extension of streets, and the assessment of adjacent lands to the extent of the benefits thereby received, in a designated taxing district. *Bauman* v. *Ross,* 167 U. S. 548, 589, 42 L. ed. 270, 288, 17 Sup. Ct. Rep. 966. The act of February 10, 1899, is of such a character.

(2) There is nothing in the record to show that there was any essential requisite to the exercise of jurisdiction, that was omitted. The owner of the title at the time the proceeding was begun was cited by publication as were all the owners of lots situated in the taxed district. He died after verdict returned and pending the order to show cause why it should not be confirmed. Parties taking his title by conveyance during that period would be bound by the confirmation of the order. *Wilkinson* v. *District of Columbia,* 22 App. D. C. 289, 295. And it makes no difference in this case that his title passed by his death, intestate, to the complainants as his heirs at law. The proceeding was against the thing. No judgment was sought against any owner by name.

(3) The lien acquired by the confirmation of the assessments and their entry on the tax roll for collection was not impaired

by the fact that the time and manner of enforcement were not definitely provided for in the act under which the proceeding was had. It was within the power of Congress to provide a method of enforcement by the later act for that purpose. *Todd v. Macfarland,* 20 App. D. C. 176, 184.

(4) The main question under this head grows out of the fact that the record shows that certain of the landowners assessed in the same proceeding filed objections to the verdict when returned. Complainants were not parties to the objections. These were overruled, and no appeal appears to have been taken therefrom. For all that appears in the record, those objectors may have withdrawn their exceptions finally and accepted the result. Had there been an appeal from the order overruling the exceptions, it should have been reversed and a new assessment ordered before another jury composed of twelve men under the provisions of sec. 263, D. C. Rev. Stat., which was adopted in the condemnation act as governing the procedure therein. *Brown* v. *Macfarland,* 19 App. D. C. 525, 530. That case was not decided until after the confirmation of the verdict in this case.

The contention on behalf of the appellants is, that the filing of objections by any one of the owners of land affected had the effect at once to vacate the verdict of the jury, that the court, thereafter, had no power to do anything else than impanel the new jury of twelve and direct it to make another assessment of damages and benefits; and, therefore, that the subsequent order of confirmation was void and of no legal effect whatever. This last proposition is founded on expressions in opinions in two decisions by this court. *Brown* v. *Macfarland,* 19 App. D. C. 525, 531; *Macfarland* v. *Saunders,* 25 App. D. C. 438, 442. The expressions to the effect that the order of confirmation in opposition to the objections against the verdict was null and void must be considered with reference to the questions actually presented for decision. In the first of those cases the objectors appealed from the order confirming the verdict notwithstanding their objections. In the second case the order confirming the verdict had been set aside, on petition of the ob-

jectors, in so far as it applied to the assessment of benefits, but confirmed as regards the assessment of damages for land taken or damaged. The commissioners of the District appealed from this order, which was affirmed. The case at bar stands on entirely different grounds. It is neither an appeal from an order overruling exceptions and confirming the verdict, nor a direct proceeding to set aside the order of confirmation, and open the case to determination by another jury. We think the order of confirmation was not absolutely void as against their attack. The appellants were not among the objectors, and it may be presumed that the objectors withdrew or waived their objections and accepted the result as they had the right to do. See *Macfarland* v. *Byrnes,* 19 App. D. C. 531, 538, decided on the same day with *Brown* v. *Macfarland,* supra. In that case the commissioners had moved the court to confirm the verdict as a whole notwithstanding exceptions filed, and the court confirmed the same as to the award for damages and vacated it as to the assessment of benefits which were declared void in accordance with a former decision of this court in regard to the assessment of benefits, which was reversed thereafter by the Supreme Court of the United States. In reversing the order so made, it was said in regard to the right of the objectors to another assessment by the new jury: "They may prefer to forego that right; and they may prefer no longer to contest the propriety and justice of the assessments. If they so elect, the court will, of course, enter the proper order or decree in the cause. If, on the other hand, they elect further to contest the matter according to law, they should have the opportunity to do so. This court should, therefore, not now direct any final order or decree to be entered by the court below in the premises."

3. Upon the theory that the order of confirmation is not subject to attack in this proceeding, and that the lien thereby created is valid and enforceable, it is contended that the bill is fatally defective in that the complainants, though asking equity, do not offer to do equity by tendering or offering to pay the same.

It is true that one seeking to remove a tax levy as a cloud upon his title must tender payment or offer to pay any part thereof that may be admitted to be valid and collectible, in order to entitle himself to relief against so much as may be illegal. And, in any event, the court, as a condition to granting relief, may require such payment.

In the case at bar there was no instalment of the assessment due or collectible at all, as we have seen, by reason of the defect in the condemnation act. Nor was that defect cured by the later act until after the bill had been filed. The complainants were under no obligation to tender payment of a sum not then due in whole or in part. By reason of lapse of time during the pendency of this litigation, the entire amount of the assessment has become due and enforceable, under the provisions of the curative act, with 4 per cent per annum from a period commencing sixty days after the confirmation of the assessment. As that assessment must remain a charge upon complainants' lots until paid, it is proper in rendering the decree canceling the sale made thereof and the certificate issued to the purchaser, to require the complainants to do equity by discharging the lien.

For the reasons given, the decree will be reversed with costs and the cause remanded with directions to enter a decree vacating the sale of complainants' lots, and canceling the certificate issued to the purchaser at said sale, Watson J. Newton, upon condition, however, that the complainants shall, within some reasonable time, to be fixed by the court, pay into court for the use of the defendants as they may be entitled, the entire amount of said assessment with interest thereon as required by the law. It is so ordered. *Reversed.*

Motions for a rehearing, filed by the appellee, Watson J. Newton, and by the appellants, were denied May 7, 1908, Mr. Chief Justice SHEPARD delivering the opinion of the Court:

Motions for rehearing filed by Watson J. Newton, one of the appellees, and by the appellants, will be considered together.

1. Newton contends that the effect of the decision heretofore made is to prevent his receiving the 12 per cent interest provided for purchasers at tax sales on redemption, and asks that the controversy on this point between him and the commissioners of the District may be settled in his favor. The answer to this motion is that the suit involved no such controversy between him and them. The purpose of the complainants' suit, to which he was made a defendant, was to vacate the tax sale, under which he held his certificate of purchase, on the ground of the illegality of the assessment so as to obviate the necessity of redemption by them. That having been decreed, whatever claim he may have against the District of Columbia on account of the money paid by him for said certificate may become the subject of controversy between them hereafter. It is not involved in this case and therefore cannot be decided. The motion is denied, with costs.

2. The motion of the appellants asserts error in the assumption in the opinion that objections to the award of the jury of review, filed by others than the appellants, must have been withdrawn and the result finally accepted by them. It is now urged that in fact two of the objectors urged their objections, and have appealed from an order overruling the same; and that, while their appeals had not been perfected at the time that our decree was rendered, they have since been. It is contended, therefore, that this rehearing should be granted, and this case reconsidered in connection with said appeals. This case, however, is not an appeal from the confirmation of the award, and it is unnecessary to consider whether notice could be taken of records in other appeals in such event. The appellants here had entered no objections, but filed an independent bill seeking to vacate the sale of their property, and also the award against them of benefits. Their case was determined on the record, consisting of bill, answer, and evidence. If a rehearing were granted, matters contained in other records could not be considered in aid of their contentions.

3. Another ground, which can be entertained as a motion to amend the decree, is that it was error to require the ap-

pellants, as a condition of the relief granted, to pay interest on the assessment from the time of entry of the same on the assessor's books as a lien. The contention is that, as the act of February 10, 1899, was inoperative as regards the time of payment of the instalments, appellants were under no duty to make payment thereunder, and were not chargeable with interest, for that reason, until the passage of the act of July 1, 1902, curing the defect in the former act. This matter was not considered in rendering the decision in this case. We now think the appellants are right in this contention.

The motion for rehearing will be denied with costs, and it is further ordered that the decree heretofore rendered be amended so as to require the appellants to pay interest under the act of July 1, 1902, from the date thereof.