**FISHER et al. v. CITY OF BARTLETT et al.**
No. 8160.

Court of Civil Appeals of Texas.   Austin.
Oct. 24, 1934.

On Appellants' Motion for Rehearing Nov.
21, 1934.

Cox & Brown, of Temple, A. L. Curtis, of Belton, and J. B. Robertson and Dan Moody, both of Austin, for appellant Mrs. S. W. Fisher.

E. H. Lawhon, of Taylor, for appellant R. F. Cates.

Stanton Allen and J. V. Morris, both of Bartlett, and W. P. Dumas, L. E. Elliott, and Burgess, Chrestman & Brundidge, all of Dallas, for appellee.

McCLENDON, Chief Justice.

Appeal from an interlocutory order denying to appellants (Mrs. Fisher, plaintiff below, and Cates, intervener below, taxpaying citizens of the city of Bartlett) a temporary injunction restraining the city, its officials and others, from performing a contract and disposing of bonds issued thereunder, whereby there was then being erected for the city a municipal electric light plant under the provisions of R. S. art. 1111 et seq.; the bonds to be secured by a mortgage upon the plant and the revenues thereof. The city had advertised for bids under the "Bond and Warrant Law of 1931" (chapter 163, p. 269, Gen. Laws, Reg. Sess. 42d Leg., § 1 et seq. [Vernon's Ann. Civ. St. art. 2368a, § 1 et seq.]), and had attempted to comply with the provisions of that act with reference to notice, competitive bids, and referendum. At the time of the hearing below, the plant was well-nigh completed; and at the time of the hearing in this court it had been fully completed, was in operation; the bonds executed, delivered to, but still held in the possession of, the contractor (a defendant below and appellee). This appears from the stipulation filed by the parties in this court. The case has therefore become moot, except as concerns further negotiation of the bonds, or payments thereunder.

Appellants contend that the contract and bonds are void, in that the competitive bidding provisions of the act were not complied with in a number of respects; and in that the trust deed securing the bonds was in a number of respects in excess of the contract and ordinance approving it, and particularly in obligating the city beyond the net revenues of the plant.

■ We have reached the conclusion that appellants have not a litigable interest in the subject-matter of the suit essential to authorize them to maintain it; and for that reason pretermit a detailed statement of the specific grounds upon which they contend that the contract and bonds are invalid.

■ As preliminary to a consideration of this issue, we will discuss appellants' contention that the trust deed imposes pecuniary obligations in excess of the net revenues of the plant, which might become a charge upon the general revenues of the city derived from taxation.

The notice to bidders and the contract provided that the bonds would be issued in accordance with the provisions of R. S. art. 1111 et seq. The notice of the referendum election provided that the holder of the bonds "shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation. Said revenue bonds to be issued under authority granted the city under arts. 1111–1118 of the Revised Civil Statutes of 1925."

The form of the bonds authorized by the ordinance, which was copied in the trust deed, provided that both principal and interest were payable "out of and from the moneys belonging to the special electric light and power system revenues bond fund of said city, created for the purpose by the revenues derived from the electric light and power system owned and operated by said city"; and "the holder hereof shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation." The trust deed contained the following additional provision: "It is expressly agreed and understood that this indenture, and the obligations herein secured, are solely a charge upon the properties herein and hereby incumbered, and shall never be reckoned in determining power of the mortgagor (City of Bartlett) to issue any bonds for any of the purposes authorized by law."

We hardly see how language could be made more plain in evidencing the purpose and intention of the city to limit the holder of the bonds to the security expressly provided for in the indenture; namely, the plant and the net revenues thereof. Appellees' contention is predicated upon a number of provisions in the indenture with reference to the revenues of the plant, wherein there is no express designation of such revenues as being net. We

think it unnecessary to incumber this opinion with these provisions or their substance. It is quite plain to us that all of them must be read in the light of the provisions above quoted, and reconciled, if possible. That they are susceptible of reconciliation we have no doubt. Wherever "revenues" generally is employed, it will be presumed that "net revenues" was intended, where such construction would be necessary to preserve the expressed intention not to impose any pecuniary liability upon the city, and to secure the bonds only by mortgage upon the plant and its revenues. Otherwise the indenture would present irreconcilable, and therefore mutually destructive, provisions. Such a construction of the language employed would not be permissible unless it were so plain as to admit of no other interpretation than one which would not only produce a conflict between different provisions of the same indenture, but also one which, independently of such conflict, would render the instrument void at least in the respect in issue. We are unable to give this construction to the language employed. But, even if such construction were inescapable, it would not affect the right of appellants to bring the suit; since the attempt to impose a liability upon the city beyond that expressed in the ordinance would be void and unenforceable. If this fact could be held to invalidate the bonds, that fact alone would not entitle appellants to injunctive relief restraining their negotiation, as a complete defense to them would appear upon their faces available whenever their payment might be sought to be exacted from revenues of the city. Polly v. Hopkins, 74 Tex. 145, 11 S. W. 1084.

The principle of law which denies appellants the right to maintain this suit is thus stated in City of San Antonio v. Strumberg, 70 Tex. 366, 7 S. W. 754, 755 (Judge Gaines writing): "We think it a principle established by the overwhelming weight of authority in the courts of all countries subject to the common law that no action lies to restrain an interference with a mere public right, at the suit of an individual who has not suffered or is not threatened with some damage peculiar to himself. As applied to public nuisances the doctrine is elementary. * * * For a special damage resulting from the invasion of a right enjoyed by a party in common with the public, the law affords him a remedy by private action, but if the damages he suffers are only such as are common to all, the action must be brought by the lawfully constituted guardian or guardians

of the public interest. The principle has been frequently applied in this court to another class of cases, and the right of an individual to sue without showing some special damage either suffered or threatened has been uniformly decided."

A number of authorities are cited and digested. See, also, the more recent case of Yett v. Cook, 115 Tex. 205, 281 S. W. 837; and 32 Tex. Jur. p. 12, § 8; and 1 Tex. Jur. p. 625, § 18, and authorities cited in support of these texts.

This principle has been specifically applied in denying to a taxpayer the right to injunctive relief in connection with contracts and bonds issued under the provisions of article 1111 et seq. Womack v. City of West University Place (Tex. Civ. App.) 32 S.W.(2d) 930; Tyrrell & Garth Inv. Co. v. Highlands (Tex. Civ. App.) 44 S.W.(2d) 1059; Johnson v. Refugio (Tex. Civ. App.) 56 S.W.(2d) 674.

█ Appellants appear to concede that this holding would be correct but for section 9 of the "Bond and Warrant Law of 1931" (Vernon's Ann. Civ. St. art. 2368a, § 9), which reads: "Any warrant bond, funding bond, refunding bond or other evidence of debt or obligation created, or attempted to be created, by the County Commissioners' Court of any county, or the governing body of any city in this State, in violation of or contrary to the provisions of this Act, shall be void, and the payment thereof may be enjoined by any taxpaying citizen of such county, or any taxpaying citizen of such city, in any court of competent jurisdiction in such county."

From our analysis of the entire act, we have reached the conclusion that section 9 does not relate to securities issued under article 1111 et seq., which are not, and can never be, made a charge against the general revenues of the city. This conclusion is arrived at from the following considerations: The main objective of the statute was the enactment of a bond and warrant law in relation to contracts for the construction of public buildings, public works, and the like, which constituted a charge upon the general revenues of the city derived from taxation. The second section of the act (Vernon's Ann. Civ. St. art. 2368a, § 2), which provides for competitive bidding, is clearly limited to this character of undertaking. The pertinent portions read: "No * * * city * * * shall hereafter make or enter into any contract or agreement for the construction of any public building, or the prosecution and completion of any public work requiring or authorizing any expenditure in excess of Two Thousand Dol-

lars ($2,000.00), creating or imposing an obligation or liability of any nature or character upon such * * * city, without," etc.

The concluding paragraph of this section reads: "Any and all such contracts or agreements hereafter made by any county or city in this State, without complying with the terms of this Section, shall be void, and shall not be enforceable in any Court of this State, and the performance of same and the payment of any money thereunder may be enjoined by any property taxpaying citizen of such county or city."

The right of action given to the taxpayer in the last quotation is expressly limited to the particular class of contracts provided for in the section; namely, those "creating or imposing an obligation or liability of any nature or character upon such * * * city." Section 11 of the act (Vernon's Ann. Civ. St. art. 2368a, § 11) specifically provides that nothing therein shall prevent cities from erecting utilities under articles 1111 to 1118, "provided, that in making such contracts or agreements or encumbrances and in issuing revenue bonds, warrants or other obligation to be paid out of the property and income from such system or systems, the governing body of such city or town shall comply with the provisions of this Act in regard to notice and competitive bids and the right to a referendum of such question." This section seems clearly to indicate that it was the purpose of the Legislature to emphasize the fact that the act was not intended to apply generally to utilities acquired under article 1111 et seq., but to ingraft on those articles the provisions of the act specifically enumerated in section 11; namely, those regarding notice, competitive bids, and the right to a referendum. Section 9, it will be observed, relates only to evidences of debt or other obligation, whether such evidence be by warrant, bond, funding bond, refunding bond, or other; whereas the last paragraph of section 2 relates to contracts and agreements. The latter, as above seen, which relates to contracts, is expressly limited to such as create or impose an obligation or liability upon the city; and the former, we think, is to be given the same effect with reference to the evidence of such obligation or liability.

In City of Dayton v. Allred, 68 S.W. (2d) 172, an adopted opinion of both sections of the Commission, it was held that articles 1111–1118, Vernon's Ann. Civ. St., were constitutional; and that securities issued thereunder did not constitute debts or obligations of the city, but merely a charge upon the properties and revenues pledged as their security. The rights evidenced by the indenture do not, we think, in any proper sense constitute a debt or obligation, in that no one is personally obligated to payment. There is merely created a lien upon specific property and the revenues derived from its operation. The two quoted provisions of the act, it seems to us, are complementary and should be read together,—the first relating to the debt at its inception, namely, the contract; and the latter to the completed debt, namely, the evidence of indebtedness. Some of the accorded relief, no doubt, the taxpayer would be entitled to independently of these provisions, and to that extent they are but declaratory of the common law. That fact alone, however, is not a warrant, we think, for extending to a taxpayer a right of action with regard to a class of securities as to which it has been uniformly held he has no litigable interest. There should also be clear intention of the Legislature, evidenced by the language employed, to give that right. Taxpayers as such clearly have no interest in securities which could never be paid out of any fund to which they contribute as taxpayers. Any citizen of the city is as much interested by virtue of his citizenship as a taxpayer is by virtue of owning taxable property within the city; and there would appear to be no valid reason for withholding this right from the general citizen while according it to the taxpaying citizen, in case of securities which can under no circumstances affect the rights of the taxpayer as such. There is therefore a manifest reason for according the right of injunction to the taxpayer in the case of contracts, the performance of which may constitute a liability against the city and evidences of indebtedness thereby created, and withholding such right as regards securities which can never be a charge against the city. The Legislature has, no doubt, the power to confer upon a taxpaying citizen the right to injunctive relief against payment of the character of securities herein involved; but we do not think a fair interpretation of the language it has employed evidences such intention.

The trial court's judgment is affirmed.

Affirmed.

On Appellants' Motion for Rehearing.

Appellants now contend in their motion that the right to maintain this suit was

given by the amendment to Revised Statutes, article 1113, contained in chapter 122, Acts of Regular Session of the 43d Legislature (Vernon's Ann. Civ. St. art. 1113). The amended article provided for the installation of a complete set of records and accounts with reference to plants purchased or erected under the provisions of the articles here in question, and the filing of reports with reference to the operation thereof. The amendment concludes: "Failure or refusal on the part of the Mayor to install and maintain, or cause to be installed and maintained, such system of records and accounts within ninety (90) days after the completion of such plant, or on the part of such superintendent or manager, to file or cause to be filed such report, shall constitute a misdemeanor and, on conviction thereof, such Mayor or Superintendent or manager shall be subject to a fine of not less than One Hundred ($100.00) Dollars, nor more than One Thousand ($1,000.00) Dollars; and any taxpayer or holder of such indebtedness residing within such city or town shall have the right, by appropriate civil action in the District Court of the County in which such city or town is located, to enforce the provisions of this Act as amended."

The same language which gives the right of enforcement of the act to taxpayers gives a like right to holders of indebtedness. It could hardly be urged that, in so far as concerns holders of indebtedness, it was intended to confer any right of action except as to those provisions of the act which had some reasonable relation to their interests as creditors. By parity of reasoning, we think clearly the right of action conferred upon taxpayers was intended to relate only to the provisions of the act which had some reasonable relation to their interests as taxpayers; that is, the provisions guarding against resort to funds raised from taxation for the operation of the industries or the discharge of any charges against them, among which are the accounting and reporting provisions of the amendment. We are unable to give the language employed a construction which would authorize taxpaying citizens to bring a suit, except to enforce the provisions of the act in so far as they relate to the interests of the taxpayers as such.

The other questions presented by the motion are fully treated in our original opinion.

The motion is overruled.

Overruled.