**POWELL et al. v. CITY OF BAIRD et al.**

No. 2032.

Court of Civil Appeals of Texas. Eastland.

Oct. 6, 1939.

Rehearing Denied Nov. 3, 1939.

W. E. Martin and Ben L. Cox, both·of Abilene, and Blanton & Blanton, of Albany, for appellants. ·

Felix Mitchell and L. L. Blackburn, both of Baird, and Scarborough & Ely, of Abilene, for appellees.

GRISSOM, Justice.

T. E. Powell et al., as plaintiffs, instituted this suit against the City of Baird, a municipal corporation, Albert C. Moore and Fairbanks-Morse & Company, a corporation, as defendants. The purpose of the suit was to cancel a contract between said city and said company, and a contract between the city and the Federal Emergency Administration, and to require the preparation of "plans and specifications that will enable other competitors to bid besides Fairbanks-Morse & Company" etc. Stated as briefly as possible, plaintiffs alleged that on September 30, 1938, a city election was held in Baird, at which there was submitted to the voters of the city the question as to whether or not said city would issue revenue bonds or warrants to be used for the purpose of constructing a municipal electric light plant. That at such election the proposition submitted to the voters was carried. That the only issue submitted to the voters was "whether or not the City of Baird should have authority to issue said revenue bonds or warrants and pledge the net revenues of the distribution plant for the purpose of paying interest, creating a sinking fund and retiring said bonds * *. The amount of such revenue bonds to be issued under said election was not to exceed $160,000." That thereafter the city applied to the United States Government for a "loan" and grant in financing the building of said municipal light plant. That the Federal Emergency Administration for Public Works of the United States Government agreed to make a grant of 45 per cent of the cost of the municipal light plant and to supply the remaining 55 per cent of the

cost of said plant by purchase of bonds. Said Federal Emergency Administration agreed to purchase revenue warrants not exceeding the sum of $91,000, which said warrants were to be paid for solely out of revenues to be derived from the operation of said plant. It was alleged that said city in its application for "such loan and grant represented that the municipal plant in competition with West Texas Utilities Company which had such a plant in the city of Baird and was operating same at said time and is now operating same, would obtain 75 per cent of the total revenues obtained from the sale of electric current and the sale of the products and service to the public in competition with said local private plant; and that the total revenues for the city of Baird for such electric sales and current had been the sum of approximately $33,152 per annum; whereas, plaintiffs allege the facts to be on information and belief and verily believe the same to be true, that the total revenues derived from the sale of electric current in the city of Baird do not exceed, and had not exceeded $26,873.00 per annum; and your petitioners also allege upon information and belief that the municipal plant, if constructed, will not attain 75 per cent of the revenue from such sales, and in fact will not receive as much as 50 per cent of such sales and revenues, as shown by contracts between the citizens of Baird and the local private plant." It was alleged that in the contract between the city and the Federal Emergency Administration it was stipulated as follows: "It shall be provided in the bond ordinance or resolution, as a separate and independent remedial provision, that in the event of default of payment of either principal or interest of the bonds as the same shall become due, the holders of twenty-five percentum or more in principal amount of the bonds shall be entitled to the appointment of a trustee to operate the system until default shall have been cured and until the system shall be in all respects current with respect to principal and interest requirements of the bonds."

It was alleged on information and belief that the statements of the City to the Federal Emergency Administration to procure said money were fraudulent and false and known by the city to be false; that the clause just quoted from the contract between the city and the Federal Emergency Administration was "ultra vires and unlawful and it was beyond the power of the City Council or Commission to bind the city in any such contract." Plaintiffs alleged that after the city had entered into said contract with the Federal Emergency Administration that "it advertised it would let the contract of construction of such generating plant and distributing system and bids were invited by such advertisement from such persons and firms as might desire to bid on the contract and thereafter contract with the city for the construction of said plant and distributing system. And on the 17th day of December, 1938, the city awarded the contract for the construction of said plant and distributing system to the defendant, Fairbanks-Morse & Company, for the sum of $145,122. That prior to the advertisement for bids, the city of Baird employed and had the defendant Moore to prepare plans and specifications for the construction of said plant and distributing system; and on information and belief plaintiffs say that the plans and specifications call for a much larger plant and a much more costly plant than the needs of the city of Baird require, even if it should attain all the revenue produced from users of electric current in said city, and that specifications for the plant on which the contract was let were for too large a plant for said city; and that the price stipulated in said contract is excessive by at least $20,000."

Plaintiffs alleged on information and belief that the specifications for the plant were so drawn by the engineer Moore that no one could bid on same but Fairbanks-Morse & Company, and that these facts were known to the said Moore and to the Fairbanks-Morse & Company at the time said plans and specifications were drawn and advertisement for bids were had. "That the advertisements for bids for such plant by reason of the unlawful and fraudulent specifications was a mere subterfuge on the part of the defendants and was made in order to comply with the form of the law in such cases made and provided; and in fact no competitive bids were desired nor asked for nor received for such work, which rendered said contract void, both by virtue of the statutes of Texas requiring such competitive bids and by reason of the common law requiring that such bids should be bona fide and in good faith. On information and belief plaintiffs say that before such specifications were drawn and before bids were advertised for and long before the contract was awarded to defendant Fairbanks-Morse & Company,

the city of Baird and its officials and other defendants had entered into a conspiracy among themselves whereby it was agreed and understood that defendant Fairbanks-Morse & Company would be awarded the contract for building such plant and such distribution system; and said agreement and conspiracy was carried out by the defendants in the following manner * * *."

"A. The specifications require that no four cylinder, four cycle engines, nor engines with air injectors may be used. This specification tends to confine the bidding to Fairbanks-Morse & Company because, out of numerous makes of Diesel engines, almost all of them, in fact, all of them that would otherwise qualify under the other specifications, have air injectors, and air injectors are standard, efficient, and represent the best engineering practice of the country.

"B. Another of the specifications requires that the engines furnished be of a speed, or preferred, of not more than 300 revolutions per minute. Fairbanks-Morse & Company is the only manufacturer building engines otherwise qualified to meet such specifications with a speed of not more than 300 revolutions per minute.

"C. Another of the specifications that requires an engine built exclusively by Fairbanks-Morse and Company is one requiring that the engines for this proposed plant shall have a piston speed of not more than 1100 feet per second, and Fairbanks-Morse & Company is the only manufacturer building such engines, capable of meeting the other requirements of the specifications, with the price range of the Fairbanks-Morse & Company engines.

"D. Another of the specifications which could only be met by engines built by Fairbanks-Morse & Company is one reading as follows:

" 'The brake mean effective pressure of the working cylinders of the 4-stroke cycle type Diesel engines to be furnished hereunder, shall not exceed 75 pounds per square inch.

" 'For 2-stroke cycle type of Diesel engines to be furnished hereunder, the brake mean effective pressure shall not exceed 40 pounds per square inch.

" 'For 2-stroke cycle type of Diesel engines furnished hereunder with oil cooled pistons, the brake mean effective pressure shall not exceed 60 pounds per square inch.' "

Plaintiffs then alleged that if the city of Baird did not conspire with Moore and Fairbanks-Morse Company to compile a set of specifications with which only said company could comply "that said specifications were, nevertheless so drawn, and that such was the effect thereof, and that if the city of Baird was overreached and deceived thereby, that its co-defendants Fairbanks-Morse & Company and Albert C. Moore did nevertheless conspire between themselves and/or with others who had to do with the drawing of such specifications so that Fairbanks-Morse & Company alone could bid for such construction, and that in either event such contract is void because based on specifications absolutely and completely excluding any bidder except said concern, and because such contract was thus, in effect, and in fact, awarded without having first been submitted to competitive bidding as required by law."

Plaintiffs alleged on information and belief that it will be necessary to take tax money out of the treasury of the city of Baird to keep said plant going and in operation, which would cause injury to plaintiffs and that if for any reason tax money from other funds be not used to keep said plant in operation that it would "be necessary to raise the rates charged for service far above the present level of rates in the city of Baird in order to pay the interest and to pay the bonds or warrants provided for in the contract with the Fairbanks-Morse & Company."

Plaintiffs alleged on information and belief that the contract between the city and said Federal Emergency Administration, and the contract between the city and Fairbanks-Morse & Company were "illegal, fraudulent and contrary to law and that the same should be enjoined and that the contract with the Fairbanks-Morse & Company should be absolutely canceled in toto and the contract with the Federal Emergency Administration should be canceled at least insofar as the city renounces its right to control and handle the system after the same has been built."

To show their interest in the subject matter of the litigation and their right to maintain the suit, plaintiffs alleged that they were (1) "taxpayers of the city of Baird"; (2) "citizens of the city of Baird" and (3) that they were users of electricity.

Colonel Dyer, and others, alleging themselves to be resident citizens of Baird and

taxpayers to the said city and the Independent School District of said city and to the United States, and users of electricity, making allegations to the same legal effect as that of the plaintiffs, were permitted to intervene.

The defendants filed a general demurrer and a general denial.

The court granted the injunction in part and in part sustained a general demurrer to plaintiffs' petition, and the plea of intervention. The court in its judgment says: "* * * the court is of the opinion that neither the plaintiffs nor the interveners as citizens and taxpayers of the city of Baird, Texas, or as users and local patrons of electric current in said city of Baird, Texas, have any litigable interest in the project proposed to be constructed, and no right to interfere with or stop such construction." The court denied the temporary injunction except as is shown by the following quotation from its judgment:

"It is the further opinion of the court that said City of Baird, Texas, should be restrained from paying out any further tax money from the general fund of said city of Baird, or from any other funds of the said City of Baird, except money obtained as a grant from the P W A of the United States Government, or from a sale of its revenue bonds."

"It is further ordered, adjudged and decreed by the court that the defendant H. Swartz, as mayor, and the said city of Baird, Texas, be, and they are enjoined and restrained, pending the final hearing hereof, from paying any money out of the general fund of the said city of Baird, Texas, obtained through taxes from the people, or any other money belonging to the said city of Baird, Texas (except proceeds of the grant that may be obtained from the P W A of the United States Government and the sale of its revenue bonds) to Albert C. Moore or Albert C. Moore & Company, or anyone else, that is incident to or a part of the expenses of the construction, maintenance, and operation of the proposed municipal electric light and power project proposed to be constructed."

In connection therewith the judgment further recited: "It is further ordered that the temporary injunction shall not operate to prevent the payment by the city of Baird of any proper funds belonging to said city in connection with the issuance, approval or sale of its revenue bonds. Said temporary injunction shall not affect the expenditure of any funds derived by the city from the operation of said municipal light plant, and the sole purpose of this temporary injunction shall be to prevent the expenditure of tax funds of said city in payment of any obligations arising from the contract entered into by and between the city and defendant Fairbanks-Morse & Company and Albert C. Moore and Albert C. Moore & Company."

From said judgment the plaintiffs and interveners have appealed to this court.

Plaintiffs' third, fourth and fifth assignments of error are in substance that the court erred in holding that plaintiffs and interveners, as citizens of Baird, as taxpayers of said city, and as users of electricity in said city were not authorized to maintain their suit. In support thereof they cite: Terrell v. Middleton, Tex.Civ. App., 187 S.W. 367, 369; Sherman v. Cage, Tex.Civ.App., 279 S.W. 508; South Texas Pub. Service Co. v. Jahn, Tex.Civ. App., 7 S.W.2d 942; City of Corpus Christi v. Mireur, Tex.Civ.App., 214 S.W. 528; Twing v. Rhodes, Tex.Civ.App., 24 S.W.2d 728; Crampton v. Zabriskie, 101 U.S. 601, 25 L.Ed. 1070; Altgelt v. City of San Antonio, 81 Tex. 436, 17 S.W. 75, 13 L.R.A. 383; City of Austin v. McCall, 95 Tex. 565, 68 S.W. 791; Texas Electric & Ice Co. v. City of Vernon, Tex.Civ.App., 266 S.W. 600; Roper & Gilley v. Lumpkins, Tex.Civ.App., 163 S.W. 110; Tullos v. Church, Tex.Civ.App., 171 S.W. 803; Palacios v. Corbett, Tex.Civ.App., 172 S. W. 777; Anderson v. Houts, Tex.Civ.App., 240 S.W. 647; Hoffman v. Davis, 128 Tex. 503, 100 S.W.2d 94; Smith v. Syracuse Imp. Co., 161 N.Y. 484, 55 N.E. 1077; Superior Incinerator Co. v. Tompkins, Tex.Civ.App., 37 S.W.2d 391; Haralson v. City of Dallas, Tex.Civ.App., 14 S.W. 2d 345; Art. 2368a, sec. 11, Vernon's Tex. Civ.St.1936, General Laws, 42nd Leg. ch. 163.

Plaintiffs' and interveners' petition shows that the proposed municipal light plant is to be paid for by a gift from the United States and by the proceeds of bonds to be purchased by the Federal Emergency Administration of Public Works of the United States. Said bonds are payable solely from revenues to be derived from the operation of said plant. The Texas statute authorizing a city to so construct its municipal light plant provides: "No such ob-

ligation of any such systems shall ever be a debt of such city or town, but solely a charge upon the properties of the system so encumbered, and shall never be reckoned in determining the power of any such city or town to issue any bonds for any purpose authorized by law." Art. 1111, Vernon's Tex.Civ.St.1936. Another statute applicable to the facts provides: "Every contract, bond, note or other evidence of indebtedness issued or included [executed] under this law shall contain this clause: 'The holder hereof shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation.'" Art. 1114, Vernon's Tex.Civ.St.1936. Also see, Art. 1118a, sec. 4, Vernon's Tex.Civ.St.1936. Art. 1118a, sec. 3, Vernon's Tex.Civ.St.1936, provides: "Whenever the income of any system or systems shall be encumbered under this law, the expense of operation and maintenance, including all salaries, labor, materials, interest, repair and extensions necessary to render efficient service and every proper item of expense shall always be a first lien and charge against such incomes." See also Art. 2368a, sec. 8a, Vernon's Tex.Civ.St.1936.

■ The applicable rule is that "the averments of material and essential elements must be sufficiently certain to negative every inference of the existence of facts under which petitioner would not be entitled to relief." See Johnson v. Ferguson, Tex.Civ.App., 55 S.W.2d 153, 159; Gillis v. Rosenheimer, 64 Tex. 243, 246.

"In view of the severity of injunction, a clear right thereto must be alleged and proved. All facts necessary as a basis for the injunction must be averred, provided they are not judicially noticeable, or presumed. It frequently has been said, in varying phraseology, that the petition must negative every hypothesis on which the act enjoined might be lawful. Or, as otherwise stated, 'The material and essential elements which entitle him [petitioner] to relief shall be sufficiently certain to negative every reasonable inference arising on the facts so stated, from which it might be deduced that he might not under other supposable facts connected with the subject, thus be entitled to relief.'

"In accordance with the established rules of pleading, allegations of fact in a suit for an injunction must be direct, certain and particular; they should not be in the form of conclusions of fact or of law.

Thus in alleging the invalidity of a law or ordinance, specific facts to support the general allegation or conclusion that the law is invalid should be set forth. So, also, the petition should contain specific fact allegations as to a right in the petitioner, a wrong done to him by the defendant, and resultant injury or damage.

"The applicant must 'show' that he is entitled to injunction according to the principles of equity, and that the relief to which he is entitled 'requires' an injunction. Among other things, the petition should allege a threat and imminent probability of injury remediable only by injunction, a substantial right or equity in petitioner, and such irreparable injury, lack of legal remedy, multiplicity or vexation, threatened clouds, diligence and the doing of equity as make a case for injunction. * * * * Obviously, the need for an injunction should be alleged where the injunction is sought in a pending action to prevent some threatened act frustrating judgment, or is sought to protect jurisdiction in an action about to be brought." 24 Tex.Jur. pp. 222 et seq. secs. 168, 169, 170.

In Mayer v. Kostes, Tex.Civ.App., 71 S.W.2d 398, 400, writ refused, as applicable to the instant case, we quote as follows:

"Despite the axiomatic rule that the matters of actual fact thus alleged must be taken as true under the legal effect of the general demurrer, this court agrees with the learned trial judge that, applying to them that uniformly strict construction to which bills for injunction must be subjected [Johnson v. Ferguson, Tex.Civ.App., 55 S.W.2d 153; Thomas v. Bunch, Tex.Civ. App., 41 S.W.2d 359; Town of Refugio v. Strauch, Tex.Com.App., 29 S.W.2d 1041], they fail to entitle him to the coveted writ
* * *

"In the second place, he does not successfully negative—that is, through specific averments of fact rather than ipse dixit, conclusions on the part of the pleader— other coexisting conditions that prevent the extension of injunctive restraint.
* * *

"By universal recognition in the domain of equity jurisprudence, the control through injunction by a single litigant, professedly acting only in a representative capacity pro bono publico, of the official acts of those intrusted with the powers of gov-

ernment is a drastic procedure, and one who essays such a rule must bring his undertaking strictly within the requirements of the position he so assumes; no mere difference of opinion on his part with the public policy or official discretion involved being permissible. Lamm v. Chambers, Tex.Civ.App., 18 S.W.2d 212, and cited authorities."

It is alleged by plaintiffs and interveners, in substance, that there is now a privately owned electric light plant operating in said city, rendering adequate and satisfactory services to said parties and the citizens of Baird generally at reasonable and satisfactory rates. · There are no facts alleged showing why they will not be able to continue to use such service. It is not shown that they need depend upon the successful operation of the municipal plant. No injury or damage peculiar to them as users of electricity is shown.

Since by virtue of the law the injunction issued by the trial court, and the contract the bonds are not a debt of the city, are not payable from taxes and, if paid, can be paid only from the income from the municipal plant, and since this is likewise true of the expense of operation and maintenance (which constitutes a first lien on such income), the facts alleged do not show that either as resident citizens, taxpayers, or users of electricity, plaintiffs and interveners have suffered or will suffer any injury or damage, much less a pecuniary loss or damage peculiar to them, and different from that which may be suffered by other citizens of Baird. As said by Judge Hickman in Hoffman v. Davis; 128 Tex. 503, 100 S.W.2d 94, 96:

"Our courts do not recognize the right of one to bring a lawsuit for another merely because he might derive some indirect benefit therefrom. A taxpayer would be benefited through the collection by the county of delinquent taxes owing by other property owners, but his interest is not of a nature to authorize him to prosecute tax suits.

"In the case of Lewright v. Love, Comptroller, 95 Tex. 157, 65 S.W. 1089, a taxpaying citizen was denied leave to file a petition for a writ of mandamus against the comptroller to compel him to institute a suit to recover taxes alleged to be due the state. One ground of that decision was that the relator had no private interest in the subject-matter authorizing him to maintain the litigation. The opinion takes notice of contrary holdings by courts of other jurisdictions, but declines to follow them.

"In the case of Stevens v. Campbell, 26 Tex.Civ.App. 213, 63 S.W. 161, opinion by the late Justice Gill of the Galveston court, one of the state's ablest jurists, the question of the right of an individual taxpayer of ·a county to institute a suit on behalf of the county to recover money illegally paid to a county officer was squarely presented and it was held that he had no such interest as would entitle him to maintain the action.

"In Harrell v. Lynch, 65 Tex. 146, it was held that, although the property rights of voters might be affected by the removal of the county seat, still they have no such personal interest in its location as to entitle them to enjoin its removal. The opinion closes with this observation: 'If a wrong has been done, the usurpation of the power to prescribe a remedy would be a still greater wrong.'

"Plaintiffs in error call upon us to adopt the views of a court of a sister state expressed in this language: 'If those entrusted with the custody of public funds, or those whose duty it is to protect the public interests are remiss in their duty, or refuse to act, the taxpayer should be permitted to do so, and the courts, in the exercise of sound discretion, will prevent any abuse of the privilege.' Once the right of citizens to bring suits of this nature is granted, under our system of practice the courts would be compelled to try them in the same way as they do other suits, and we know of nothing they could do to prevent the abuse of the privilege. But we are not called upon to decide either whether citizens would abuse the privilege, if granted, or whether it should be granted. What we decide is that it has not been granted. Whether or not it would be a wise public policy to grant it is a legislative, and not a judicial question."

We think many authorities may be found where the decision, in principle, is to the effect that the complaining parties herein are not entitled to maintain this suit. However, we think the identical questions here presented by appellants have been specifically and positively recently decided contrary to the contentions so earnestly made by them, and that such decision has the approval of the Supreme Court of Texas.

In Hazelwood v. City of Cooper, Tex. Civ.App., 87 S.W.2d 776, writ refused, Hazelwood filed suit against the City of Cooper, its governing body and the Central Engineering & Supply Company, and another, seeking to enjoin the execution and performance of a contract between the City of Cooper and said Engineering Company for the construction of a municipal electric light and power plant, and to enjoin the execution of a proposed bond issue and mortgage securing the bonds. Hazelwood alleged that the contract, bond and mortgage were illegal and would be executed and performed unless said parties were restrained. He alleged that he was "a taxpayer and a user of electric current, and, as such, would suffer damages for which he had no adequate remedy at law." He sought a temporary injunction and upon a hearing that it be made permanent. He alleged that the city and the construction company had entered into a contract for the construction of a municipal electric power plant, that an election had been held and the proposition to build the plant had carried. He charged irregularities in the preliminary steps taken by the city with reference to entering into the contract with the engineering company. The court sustained the general demurrer and dismissed the suit. The court said:

"It appears from the application of appellees to dismiss this case that the power plant is now in operation, therefore this case becomes moot except as to the payment of the bonds out of the proceeds derived from the operation of said light plant.

"It is apparent from a study of the petition of the appellant, as well as from his brief filed in this cause, that he *bases his right to bring this cause of action on the fact 'that he is a long-resident, property-owning taxpayer of the city* of Cooper, Delta County, Texas; that he is *likewise a user of electric current* for himself and family and in his business, in the conduct and operation of a hotel in the city of Cooper,' as provided in section 9 of the Bond and Warrant Act of 1931 (Vernon's Ann.Civ.St. art. 2368a, § 9) as follows: 'Any warrant bond, funding bond, refunding bond or other evidence of debt or obligation created, or attempted to be created, by the County Commissioners' Court of any county, or the governing body of any city in this State, in violation of or contrary to the provisions of this Act, shall be void, and the payment thereof may be enjoined by any tax-paying citizen of such county, or any tax-paying citizen of such city, in any court of competent jurisdiction in such county.'

"We are of the opinion that the article of the statute quoted above has no application to the case under investigation. Upon an examination of the above article and the preceding articles of the Bond and Warrant Act, it will be seen that it refers to obligations created or attempted to be created which will be paid for out of funds raised by taxation. In the case of Fisher et al. v. City of Bartlett et al. (Tex. Civ.App.) 76 S.W.(2d) 535, 538, this identical question is ably discussed by Judge McClendon in which he says: 'Any citizen of the city is as much interested by virtue of his citizenship as a taxpayer is by virtue of owning taxable property within the city; and there would appear to be no valid reason for withholding this right from the general citizen while according it to the taxpaying citizen, in case of securities which can under no circumstances affect the rights of the taxpayer as such. There is therefore a manifest reason for according the right of injunction to the taxpayer in the case of contracts, the performance of which may constitute a liability against the city and evidences of indebtedness thereby created, and withholding such right as regards securities which can never be a charge against the city.'

"As stated in the beginning, it appears from the petition of the appellant that the notice of election and the bonds voted by the people of the city of Cooper contained the statutory provision that they could never be a debt against the city, payable out of funds raised, or to be raised, by taxation; but the payment of said bonds would be made out of the proceeds derived from the operation of the plant. Therefore, *the injuries, if any, of which appellant complains are common to all the citizens of Cooper and not peculiar to him. By this action of the city of Cooper in contracting with the Central Engineering & Supply Company for the construction of a municipal light plant and executing a mortgage thereon, the appellant, Hazelwood, has not been singled out and had special damages inflicted upon him.*

"In the case of City of San Antonio v. Strumberg, 70 Tex. 366, 7 S.W. 754, 755, Judge Gaines, speaking for the Supreme Court, says: 'We think it a principle established by the overwhelming weight of authority in the courts of all countries subject to the common law that no action lies

to restrain an interference with a mere public right, at the suit of an individual who has not suffered or is not threatened with some damage peculiar to himself. As applied to public nuisances the doctrine is elementary. 2 Cooley, Bl. 219. For a special damage resulting from the invasion of a right enjoyed by a party in common with the public, the law affords him a remedy by private action, but if the damages he suffers are only such as are common to all, the action must be brought by the lawfully constituted guardian or guardians of the public interest. The principle has been frequently applied in this court to another class of cases, and the right of an individual to sue without showing some special damage either supposed or threatened has been uniformly decided. * * * It has been intimated that the reason this rule was established was in order to prevent a multiplicity of suits which might result if each individual were permitted to sue for damage resulting from a public nuisance which was common to all others, but we apprehend that the underlying principle is that individuals have a right to sue for a redress of their own private injuries, but for such as affect all the public alike an individual is not the representative of the public interest.'

"Therefore, in our opinion, the *appellant has shown no litigable interest in this suit,* and the trial court properly sustained the general demurrer to his petition because same stated no cause of action which was peculiar to him and not to all other citizens in the city of Cooper." (Italics ours)

In Jenkins v. City of Cooper, Tex.Civ. App., *87 S.W.2d 778, 779,* writ refused, the fact situation is similar to that of the instant case. Among other things, the plaintiff there alleged that the contract between the city and the company that built the municipal light plant was let without competitive bidding. At the time the opinion was written the plant had been built and was in operation. The case was moot, as the opinion declares, "except as concerns payment of the bonds out of the revenues of the plant." The plaintiff there alleged that he was bound by his contract to patronize the municipal light plant in the purchase of electricity; that the city had paid more for its plant than it would have cost under competitive bidding; that the city would, therefore, have to fix a higher rate in order to pay for the plant than it would had the plant been purchased at a figure that it could have been purchased at through competitive bidding and that, therefore, the plaintiff would be required to pay more for his electricity than he would have been required to pay if the contract for the plant had been let by competitive bids. (In the instant case we have no such allegation.) In the Jenkins case the general demurrer was sustained and the suit dismissed.

In Hoff v. Westhoff, Mayor, Tex.Civ. App., 102 S.W.2d 293, an election contest was instituted by Hoff as a "qualified voter and property taxpaying citizen" of the city of Yorktown. The election was for the purpose of determining whether or not said city would issue revenue bonds for constructing an electric light and power system for the city. A general demurrer was sustained to Hoff's petition because as a voter and taxpayer of the city it was not shown that he had any interest in the result of said election peculiar to him, or different from the interest of the public generally.

In Fisher v. City of Bartlett, Tex.Civ. App., 76 S.W.2d 535, 536, writ refused, Mrs. Fisher, as plaintiff and one Cates, as intervener, sought a temporary injunction restraining the city of Bartlett from performing a contract and disposing of bonds to a municipal electric light plant under provisions of Art. 1111 et seq. The case when passed on by the appellate court, except as to negotiation of the bonds and payment thereof, was moot. Mrs. Fisher and Cates contended that the contract and bond there in question (and evidently in all material respects in the same legal situation as those in question in the instant case) were void because of lack of competitive bids. The temporary injunction sought by the plaintiff and intervener having been denied, they appealed. It was held that Art. 2368a, sec. 9, and Art. 1113 did not authorize such plaintiff and intervener to maintain the suit. We quote from the opinion as follows:

"We have reached the conclusion that appellants have not a litigable interest in the subject-matter of the suit essential to authorize them to maintain it; and for that reason pretermit a detailed statement of the specific grounds upon which they contend that the contract and bonds are invalid.

* * *

"This principle has been specifically applied in denying to a taxpayer the right

to injunctive relief in connection with contracts and bonds issued under the provisions of article 1111 et seq. Womack v. City of West University Place (Tex.Civ.App.) 32 S.W.2d 930; Tyrrell & Garth Inv. Co. v. Highlands (Tex.Civ.App.) 44 S.W.(2d) 1059; Johnson v. Refugio (Tex.Civ.App.) 56 S.W.(2d) 674."

Also see Wood v. City of Victoria, 18 Tex.Civ.App. 573, 46 S.W. 284, 287, writ refused; Dallas Electric Co. v. City of Dallas, 23 Tex.Civ.App. 323, 58 S.W. 153, 156; Caruthers v. Harnett, 67 Tex. 127, 2 S.W. 523; Sayles v. City of Abilene, Tex.Civ.App., 196 S.W. 1000, 1002.

In Altgelt v. City of San Antonio, 81 Tex. 436, 448, 17 S.W. 75, 76, 13 L.R.A. 383, the court said:

"It follows, therefore, that, for the reasons given and elaborated in that case by Chief Justice Stayton, the contract in the case under consideration is illegal and unauthorized. But it does not follow, we think, in this case that because the contract is, as alleged by plaintiff, unauthorized and illegal, and creates a monopoly, or attempts so to do, and surrenders for the period of 25 years the legislative power with which the city is invested, that for these reasons alone the plaintiff can in this suit vacate or set aside said contract. In the case mentioned the suit was by the water-works company to enforce the contract. This was resisted by the city of Brenham upon the ground that it attempted to create a monopoly, and was a surrender of the legislative power in the city with reference to that subject for 25 years. In the case under consideration the city is not complaining. On the contrary, the contract is recognized by the city, and, as long as it is so recognized by the city through its properly constituted authorities, it cannot be vacated by plaintiff upon these grounds.

"The plaintiff does not show by his averments that he, as a tax-payer of the city, is authorized to maintain this action by reason of any injury resulting to him from the contract of October, 1877, entered into by the city of San Antonio. It does not appear from the petition that he is prevented from obtaining water upon any better terms, nor does it appear that he is compelled under the terms of that contract to get water from the defendant water-works company, only we do not mean to say that a tax-payer of a municipal corporation cannot maintain a suit like the present, under proper averments showing injury to him as such tax-payer resulting from an illegal and unauthorized contract. But the petition does not present such a case with respect to the contract originally entered into by the city, in October, 1877."

The court further held that the allegations of plaintiff's petition that the city had exempted the defendant waterworks company from payment of taxes on its property of the value of $250,000 had resulted in increasing the plaintiff's taxes, would authorize him to maintain the suit. However, on motion for rehearing it was said: "The plaintiff nowhere avers the amount of such excess, nor does he allege any other facts or amounts from which the excess may be arrived at by a mathematical calculation." The plaintiff's petition was, therefore, held subject to a general demurrer and the judgment of the trial court dismissing the petition was sustained.

Interveners assert that as payers of Federal taxes they are authorized to maintain this suit. The Supreme Court of the United States in Alabama Power Co. v. Ickes, Federal Adm'r of Public Works, 302 U.S. 464, 478, 58 S.Ct. 300, 303, 82 L.Ed. 374, said: "Petitioner alleges that it is a taxpayer; but the interest of a taxpayer in the moneys of the federal treasury furnishes no basis for an appeal to the preventive powers of a court of equity." If as such taxpayers they suffer injuries or damages as a result of the matters complained of, it is not shown that such injury or damage is peculiar to them, or is different from that resulting to all other Federal taxpayers.

It is certain that as to the cancellation of the contract between the city and the Federal Emergency Administration of Public Works that it was not subject to cancellation because of the absence of one of the parties to said contract as a party to the suit.

In connection with plaintiffs' allegations on information and belief, and the verification of interveners' petition, we call attention to Tindall v. Tindall, Tex.Civ.App., 129 S.W.2d 1209 and cases there cited. Also see 24 Tex.Jur. 238.

We are of the opinion that plaintiffs and interveners have shown no litigable or justiciable interest in the subject-matter of this suit authorizing them to maintain it.

The judgment is affirmed.