**SULLIVAN v. UNIVERSAL ELECTRIC CONST. CO. OF ALABAMA, Inc., et al.**

No. 9836.

Court of Civil Appeals of Texas. Austin.

Feb. 1, 1950.

Rehearing Denied Feb. 22, 1950.

Scott Snodgrass, of San Angelo, W. G. Bedford, of Winters, W. E. Allen, of Coleman, for appellant.

Victor Bouldin and W. B. Browder, Jr., of Vinson, Elkins, Weems & Frances, of Houston, Scarborough, Yates, Scarborough & Black, of Abilene, Hilton E. Howell, of Waco, for appellees.

ARCHER, Chief Justice.

This is a suit instituted by C. E. Sullivan and L. A. David, but David withdrew as a party and the case was prosecuted to final judgment by Sullivan, against the City of Winters, its governing officials, the Universal Electric Construction Company of Alabama, Inc., its corporate surety upon a performance bond given by it to the City, and Ballard-Hassett Company and certain named individuals alleged to be owners of original revenue bonds, refunding bonds and lease revenue warrants, and alleged to have been active participants with the City in the consummation of certain invalid transactions relating to a contract of Universal Electric Construction Company of Alabama, Inc., to build an electric generating plant and distribution system for the City of Winters.

The plaintiff sought a declaration by the court fixing and determining the rights of all the parties under the original construction contract entered into in November of 1941, and under certain amendments thereof attempted to be effected in September of 1946, and he sought an adjudication of the validity of certain refunding bonds and lease rental warrants issued as a result of the 1946 negotiations, and of a portion of a series of refunding revenue bonds issued in the year 1948 while the suit was pending for trial in the district court.

The case was heard before the court without the intervention of a jury, and judgment was rendered that the plaintiff take nothing. The court filed findings of fact and conclusions of law.

It is alleged that in 1941 the City had an election, overwhelmingly voted in favor of the issuance of $175,000 revenue bonds, and on November 15, 1941, entered into a contract with Universal for the construction of an electric light and power plant and distribution system for its residents. When the bonds were first voted, an injunction suit filed by the West Texas Utilities Company thwarted progress for some months. However, construction was commenced after such delay, but on March 12, 1942, when the plant was approximately seventy-five per cent completed, the City was ordered to halt such construction by official order of the War Production Board. In further disruption of construction during the war, engines, wire and other critical materials already installed or on hand were taken by the Government.

War Production Board orders and governmental restrictions were released in the summer of 1946, and the City again began its fight to secure its own electric light and power plant and system. The City, its mayor, aldermen and attorneys found that the $16,000 remainder due to Universal upon the construction contract had been expended during the war years and that the City had no way to raise such sum; the Second War Powers Act, under which the War Production Board had issued orders halting construction, providing immunity to the contractor against a suit for damages; labor and material were almost impossible to obtain, and prices were greatly in excess of prices before the war. The City and its duly elected officers continued to fight, and conceived the idea of reducing the contract price to the available $144,000, already paid Universal, and of securing from the bond

purchaser, Neu, the necessary engines. They negotiated a new or supplemental contract or novation with the contractor. They got Neu to buy and supply the engines and rent them to the City on a day to day basis. With the good faith and whole-hearted cooperation of the contractor and the money lender, this plan was evolved by the City into the transactions of September 10, 1946, of which Sullivan complains.

In February 1947 the plant was completed. All of the bonds, warrants and contracts of which Sullivan complained when the suit was filed were paid, discharged and cancelled, and additional engines and equipment secured for the then successfully operating power plant. The engines belong to the City, the entire plant and distribution system belongs to and is operated by the City, and the contractor has been paid. There is now outstanding the bond obligation against the revenue from the electric system, but there are not now and there have never been any tax bonds, warrants or other obligations imposed upon the residents of Winters in the acquisition of the municipal plant.

Appellant assigns as error nine points. Under the first point he complains of the failure of the trial court to decree whether the transactions of September 10, 1946, or any phases were invalid, and if so to fix the rights and liabilities of the City of Winters; and by the second point, the error of the court in refusing to declare the supplemental contract of September 10, 1946, to be void; and by the third, the error in refusing to decree the $34,000 of refunding bonds issued September 10, 1946, and the interest coupons attached thereto to be void, as an attempted refunding of that amount of interest coupons of the original 1941 bond issue; and by the fourth point the error of the court in refusing to decree that the ordinance authorizing the lease agreement with Neu was invalid; and further by the fifth point the court was in error in refusing to adjudicate that the transactions of September 10, 1946, were a fraudulent scheme between the contractor Neu and the Bond Company, so that the contractor would be released from his obligations and that Neu and the Bond Com-

pany would wrongfully receive refunding bonds and lease rental warrants at the expense of and in fraud upon the rights of the City; and by the sixth point, the error of the court in refusing to decree that the $219,000 revenue bonds issued in 1948 were valid only to the extent that they represented the original 1941 issue of $175,000 with simple interest; and by the seventh point, of the error of the court in refusing to decree that the $36,396.50 of the $150,000 bonds issued in 1948 were invalid; by the eighth point error is assigned at the failure of the court to decree that $1,116.56 (or at least $871.56) of the $219,000 bonds in payment of interest were invalid; and, likewise, in the ninth point of the error of the court in refusing to decree that the $6,832.50 of the $150,000 bonds of 1948 used to create a sinking fund to pay the first six months' interest on the total of the 1948 bond issue were invalid.

The appellees rely on seventeen counter-points, generally, to the effect that the court properly rendered judgment that the plaintiff take nothing because he had no litigable or justiciable interest in the subject matter of the suit, and that the funds to be expended or pledged were to be paid solely from revenue derived from the municipal electric power plant and system; and a lack of interest in the matter in controversy as is required in any other suit or action; and that the West Texas Utilities Company was the real party; and failing to consider testimony in this connection; and that equitable relief was barred by violation of the laws; and that at the time of the trial the bonds voted in 1948 had been issued and that all bonds and other contracts and obligations theretofore issued in the acquisition of the City's electric distribution and power system and complained of by plaintiff had been taken up and cancelled; and further that the matters and issues so sought to be litigated were moot at the time of the trial; and that the bonds voted and issued in 1948 were properly and legally voted and then issued by the City; and further that the contract of September 10, 1946, between the City and Universal was a valid, legal and binding agreement upon the parties; and that the contract was

**390**

a novation or amendment based upon a good, legal and valuable consideration; and further that the $34,000 of refunding bonds were good and valid, and that the amount expended by Neu and Universal at the request of the City upon interest was a proper and legal charge; and further that the ordinance authorizing the lease was valid, and that the transactions of September 10, 1946, were not fraudulent; and, finally, that the case being one tried without a jury and there is evidence in the record to support the findings of the trial court, such findings have the same force as a verdict of a jury and should not be disturbed by this court. The trial court overruled pleas in abatement filed by appellees, and after a final trial on its merits the court again overruled the pleas in abatement and other dilatory motions and exceptions, and entered a judgment that plaintiff (appellant herein) take nothing by the suit and that all other relief be denied, that the law and facts are with the defendants, and that plaintiff be granted no relief.

In our opinion the trial court erred in holding that appellant had a justiciable interest authorizing him to maintain his suit.

The general rule is stated in 1 Tex. Jur., 625, Sec. 18, as follows:

"In general the law affords to private persons a remedy for private wrongs only. * * *

"An action does not lie to restrain interference with a mere public right at the suit of an individual who has not suffered or is not threatened with some damage peculiar to himself. * * * If the damages be only such as are common to all, the action must be brought by the lawfully constituted guardian or guardians of the public interest."

This rule was early announced by the Supreme Court of Texas in a line of cases of which City of San Antonio v. Strumberg, 70 Tex. 366, 7 S.W. 754, is typical, and has never been varied except for the line of cases of which Terrell v. Middleton, Tex.Civ.App., 187 S.W. 367, is an example, in which it is held that a taxpaying citizen may enjoin the unlawful expenditure of

tax funds to which he is obligated, as a tax payer, to contribute.

None of the contracts, bonds or warrants, or transactions involved in this case are payable from taxation. The entire cost of the City's electric light and power system is being paid from the proceeds of revenue bonds under arts. 1111–1118, Vernon's Ann. Civ.St., and under the express terms of these Articles the project is self-liquidating, and the bondholders can never demand payment out of funds raised or to be raised by taxation.

This court had before it this question in the case of West Texas Utilities Company v. Smith, Tex.Civ.App., 168 S.W.2d 665, 666, Writ Ref., in which it was held: "That a taxpayer of the City does not have a litigable interest in the subject matter which would authorize him to maintain a suit to enjoin execution or enforcement of contract or bonds of this character was held in Fisher v. City of Bartlett, Tex.Civ.App., 76 S.W.2d 535, error dismissed; Id., Tex. Civ.App., 88 S.W.2d 1068, error dismissed. This was the only point decided in the two appeals; and the decision was later expressly approved in Hazelwood v. City of Cooper, Tex.Civ.App., 87 S.W.2d 776, error refused. Authorities on the subject are reviewed at some length in Powell v. City of Baird, [Tex.Civ.App.], 132 S.W. 2d 464."

The right of appellant to maintain this suit under the provisions of Sec. 9 of art. 2368a, Vernon's Ann.Civ.St., is discussed and denied in Fisher v. City of Bartlett, 76 S.W.2d 535, 538, in which this court said:

"The right of action given to the taxpayer in the last quotation is expressly limited to the particular class of contracts provided for in the section; namely, those 'creating or imposing an obligation or liability of any nature or character upon such * * * city.' Section 11 of the act (Vernon's Ann.Civ.St. art. 2368a, § 11) specifically provides that nothing therein shall prevent cities from erecting utilities under articles 1111 to 1118, 'provided, that in making such contracts or agreements or encumbrances and in issuing revenue bonds,

warrants or other obligation to be paid out of the property and income from such system or systems, the governing body of such city or town shall comply with the provisions of this Act in regard to notice and competitive bids and the right to a referendum of such question.' This section seems clearly to indicate that it was the purpose of the Legislature to emphasize the fact that the act was not intended to apply generally to utilities acquired under article 1111 et seq., but to ingraft on those articles the provisions of the act specifically enumerated in section 11; namely, those regarding notice, competitive bids, and the right to a referendum. Section 9, it will be observed, relates only to evidences of debt or other obligation, whether such evidence be by warrant, bond, funding bond, refunding bond, or other; whereas the last paragraph of section 2 relates to contracts and agreements. The latter, as above seen, which relates to contracts, is expressly limited to such as create or impose an obligation or liability upon the city; and the former, we think, is to be given the same effect with reference to the evidence of such obligation or liability.

" * * * The two quoted provisions of the act, it seems to us, are complementary and should be read together,—the first relating to the debt at its inception, namely, the contract; and the latter to the completed debt, namely, the evidence of indebtedness. Some of the accorded relief, no doubt, the taxpayer would be entitled to independently of these provisions, and to that extent they are but declaratory of the common law. That fact alone, however, is not a warrant, we think, for extending to a taxpayer a right of action with regard to a class of securities as to which it has been uniformly held he has no litigable interest. There should also be clear intention of the Legislature, evidenced by the language employed, to give that right. Taxpayers as such clearly have no interest in securities which could never be paid out of any fund to which they contribute as taxpayers. Any citizen of the city is as much interested by virtue of his citizenship as a taxpayer is by virtue of owning taxable property with-

in the city; and there would appear to be no valid reason for withholding this right from the general citizen while according it to the taxpaying citizen, in case of securities which can under no circumstances affect the rights of the taxpayer as such. There is therefore a manifest reason for according the right of injunction to the taxpayer in the case of contracts, the performance of which may constitute a liability against the city and evidences of indebtedness thereby created, and withholding such right as regards securities which can never be a charge against the city. The Legislature has, no doubt, the power to confer upon a taxpaying citizen the right to injunctive relief against payment of the character of securities herein involved; but we do not think a fair interpretation of the language it has employed evidences such intention."

The revenue bonds having been sold and the proceeds expended, appellant is also precluded under the rule announced in Hoffman v. Davis, 128 Tex. 503, 100 S.W.2d 94, 95, where the court held:

"We find it unnecessary to determine the question of whether under the statutes as they existed at the time the contracts involved were executed, the commissioners' court was wholly without power to enter into them. This for the reason that, regardless of how the obligation arose, the suit is one for the collection of a debt alleged to be owing to the county as such, and the question of the right of citizens to institute and prosecute an action for the collection thereof does not rest upon a determination of how the obligation arose.

 *   *   *   *   *   *

"A further reason for denying plaintiffs in error the right to maintain this suit lies in the fact that they have no private interest in the subject-matter. When a taxpayer brings an action to restrain the illegal expenditure by the commissioners' court of tax money he sues for himself, and it is held that his interest in the subject-matter is sufficient to support the action; but when the money has already been spent, an action for its recovery is for the county. The cause of action belongs to it alone. Our courts do not recognize the right of one

to bring a lawsuit for another merely because he might derive some indirect benefit therefrom. * * *

\* \* \* \* \* \*

" * * * Once the right of citizens to bring suits of this nature is granted, under our system of practice the courts would be compelled to try them in the same way as they do other suits, and we know of nothing they could do to prevent the abuse of the privilege. But we are not called upon to decide either whether citizens would abuse the privilege, if granted, or whether it should be granted. What we decide is that it has not been granted. Whether or not it would be a wise public policy to grant it is a legislative, and not a judicial question."

Under this holding no other question raised by the parties need be considered or determined.

The judgment of the trial court is reversed and judgment is here rendered dismissing appellant's suit.

Reversed and dismissed.